### CLEVELAND, C., C. & ST. L. RY. CO. v. HAWKINS et al.

(Circuit Court, D. Indiana. February 20, 1897.)

### No. 8,733.

BANKS AND BANKING—SPECIAL DEPOSITS—BANK AS TRUSTEE—INSOLVENCY.

The C. Ry. Co., in order to secure one H. as surety for it on a bond for $18,000, given pursuant to an order of court, made a special deposit of $18,000 in the name of H., trustee, in a bank of which H. was president, receiving from the bank a certificate stating the particulars of such deposit, and its purpose. The money so deposited was never separated from the other moneys of the bank, but the amount was credited on the books to H., trustee. Some time after the deposit was made, H. drew $9,000 in checks signed as trustee, deposited the same in his personal account, and checked it out. The trust account showed a balance of $9,000 when the bank failed and passed into the hands of a receiver, the cash then in the bank amounting to about $11,000. *Held*, that the C. Ry. Co. was entitled to have its claim allowed as a preferential claim upon the assets in the receiver's hands to the extent of $9,000 only, and to be paid the remaining $9,000 pari passu with other creditors.

John T. Dye and Elliott & Elliott, for complainant, cited the following:

Casey v. La Societe De Credit Mobilier, 2 Woods, 77, Fed. Cas. No. 2,496; McKee v. Lamon, 159 U. S. 317, 16 Sup. Ct. 11; Cook v. Tullis, 18 Wall. 342; Jones v. Kilbreth (Ohio Sup.) 31 N. E. 349; Knatchbull v. Hallett, 13 Ch. Div. 696; Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co., 104 U. S. 54; Frelinghuysen v. Nugent, 36 Fed. 239; Peters v. Bain, 133 U. S. 697, 10 Sup. Ct. 354; Oil Co. v. Hawkins, 20 C. C. A. 468, 74 Fed. 401; San Diego Co. v. California Nat. Bank, 52 Fed. 59; Van Alen v. Bank, 52 N. Y. 1; Dows v. Kidder, 84 N. Y. 121; People v. City Bank of Rochester, 96 N. Y. 32; Cavin v. Gleason (N. Y. App.) 11 N. E. 504; McLeod v. Evans, 66 Wis. 401, 28 N. W. 173, 214; Silk Co. v. Flanders (Wis.) 58 N. W. 384; Myers v. Board, 51 Kan. 87, 32 Pac. 658; Independent Dist. v. King, 80 Iowa, 497, 45 N. W. 908; Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514.

John W. Kern, for respondent Edward Hawkins, cited the following:

10 Am. & Eng. Enc. Law, 12; Reissner v. Oxley, 80 Ind. 580; Chicago v. Sheldon, 9 Wall. 50; 27 Am. & Eng. Enc. Law, 82, 83; Knatchbull v. Hallett, 13 Ch. Div. 696, 753; Frelinghuysen v. Nugent, 36 Fed. 229, 239; Peters v. Bain, 133 U. S. 670, 697, 10 Sup. Ct. 354; Central Nat. Bank of Baltimore v. Connecticut Mut. Life Ins. Co., 104 U. S. 54; Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; Atkinson v. Printing Co., 114 N. Y. 168, 121 N. E. 178; In re North River Bank (Sup.) 14 N. Y. Supp. 261; Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005; Sherwood v. Bank, 94 Mich. 78, 53 N. W. 923; Englar v. Offutt, 70 Md. 78, 16 Atl. 497; Appeal of Carmany (Pa. Sup.) 31 Atl. 334; Freiberg v. Stoddard, 161 Pa. St. 259, 28 Atl. 1111; Trustees v. Kirwin, 25 Ill. 73; Bank v. Goetz (Ill. Sup.) 27 N. E. 909; Wetherell v. O'Brien (Ill. Sup.) 29 N. E. 904; Association v. Jacobs, 141 Ill. 261, 31 N. E. 414; Wilson v. Coburn (Neb.) 53 N. W. 466; Slater v. Oriental Mills (R. I.) 27 Atl. 443; Parker v. Jones, 67 Ala. 234; Shields v. Thomas (Miss.) 14 South. 84; Steamboat Co. v. Locke, 73 Me. 370; Fowler v. True, 76 Me. 43; Fletcher v. Sharpe, 108 Ind. 276, 9 N. E. 142; Bank v. Blackmore, 21 C. C. A. 514, 75 Fed. 771; Wasson v. Hawkins, 59 Fed. 236.

BAKER, District Judge. This is a bill to procure the allowance of an alleged preferential claim amounting to $18,000 upon the as-

sets of the Indianapolis National Bank in the hands of Edward Hawkins as receiver, for money deposited in said bank by the complainant company as a special deposit in trust, and which money, it is claimed, was mingled with the moneys of the bank which came into the hands of the receiver. The material facts shown by the evidence in this cause are as follows: An order was made by this court directing the trustees to satisfy of record a certain mortgage securing 18 lost or missing bonds issued in 1871 by the Cincinnati, Wabash & Michigan Railroad Company, upon the execution of a bond by the complainant company, with Theodore P. Haughey as surety, for the payment to the holders of said bonds, upon the presentation thereof to the clerk of this court, of such sums as they would be legally entitled to receive from the trustees of the mortgaged property. The complainant company executed a bond with Theodore P. Haughey as surety, conditioned for the payment to the holders of said 18 lost or missing bonds, pursuant to such order. The complainant having at that time a balance of $50,000 in the Indianapolis National Bank, delivered to the bank a check, payable to its order, which is as follows:

"The Cleveland, Cincinnati, Chicago and St. Louis Railway Company.
"$18,000.                                           No. A 2,349.

"Cleveland, O., Mch. 7th, 1892.
"Pay to the order of Indianapolis Nat'l Bank, Indp., Ind., eighteen thousand & 00 dollars.                                G. S. Russell, Treasurer.
"To Indianapolis National Bank, Indianapolis, Ind."

At the time of the delivery of this check to the bank it executed the following certificate of deposit:

"Indianapolis, March 8, 1892.
"The C., C., C. & St. L. Ry. Co. has this day made a special deposit of eighteen thousand dollars in the Indianapolis National Bank in the name of T. P. Haughey, trustee, to secure him as surety on a bond given under an order of the U. S. circuit court for the payment of C., W. & M. R. R. bonds of the issue of 1871, numbered 449, 866 to 870, inclusive, 902, 1460, 1462 to 1471, inclusive, according to the terms of said order; in all 18 bonds.
"The Indianapolis National Bank,
"By Theo. P. Haughey, Pres't."

The order of the court referred to in the foregoing instrument, so far as material here, is as follows:

"Thereupon the complainant herein submits to the court its bond and obligation providing for the payment to the holders of said eighteen (18) bonds above numbered and specified, when they shall be produced to the clerk of the United States circuit court, of the sums which said holders shall be legally entitled to receive under said mortgage from the proceeds of said mortgaged property as their pro rata share of the proceeds thereof, which bond is executed by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, with T. P. Haughey of Indianapolis as surety, and produces to the clerk the certificate of the Indianapolis National Bank showing that it has made a deposit in said bank to the credit of said Haughey as trustee for the sum of $18,000, to secure him as such surety, which bond and security are now approved by the court, and the said trustees, J. Alfred Barnard and Arthur G. Wells, are ordered and directed to satisfy of record the mortgage hereinabove described upon the surrender and cancellation of the 1982 bonds held by the Cincinnati, Wabash and Michigan Railway Company."

The money represented by the check was never separated from the other moneys of the bank, but remained an undistinguishable part of the common mass. On the 20th day of May, 1893, Theodore P. Haughey, as trustee, by a check so signed, drew $5,000 from this account of $18,000, which had been entered on the books of the bank to the credit of T. P. Haughey, trustee; and on the 29th day of May, 1893, T. P. Haughey, trustee, drew another check against said deposit for $4,000. The sums represented by these two checks were charged against said deposit, and were passed to the individual credit of T. P. Haughey. The moneys so credited to T. P. Haughey's individual account soon afterwards, and before the failure of the bank, were checked out by him for his own personal use. The deposit account remained in this condition, with a balance of $9,000 standing in the name of T. P. Haughey, trustee, on the books of the bank, at the time of its failure, on July 24, 1893. When the bank failed, there was in the vaults of the bank in cash $11,646.87. It also had in its possession in the hands of agents, in cash, the further sum of $53,833.70. On these facts the court is of opinion that the complainant is entitled to have its claim allowed as a preferential claim to the extent of $9,000 only. The deposit of $18,000 made by complainant in the bank perhaps ought to have been separated from the other moneys of the bank, and set apart as a special deposit. It may be conceded that the bank committed a breach of trust in failing so to separate it from its other moneys, and to hold it as a special deposit. In point of fact the deposit was placed to the credit of T. P. Haughey, trustee, on the books of the bank, and the money represented by such deposit constituted an undistinguishable part of the mass of money in the bank. It was so deposited in pursuance of the agreement of the complainant and the bank. If the bank is to be regarded as a trustee holding the money as a special deposit, the breach of such trust would not, under the facts of this case, give the complainant a right to charge the assets in the receiver's hands with a preferential claim. The ancient doctrine only permitted a trust fund which had been diverted or misapplied to be followed and recovered, when it could be traced and identified. The modern and better doctrine permits the recovery of trust funds which have been misapplied, when it is shown that such trust funds have entered into and form a part of the assets which have come into the possession of the receiver, although the identical trust funds are so intermingled with the common mass as to be incapable of identification. But the right to priority of payment out of the common mass is not grounded on the breach of trust merely. It rests upon the ground that the trust funds have entered into and form an undistinguishable part of the assets which have come into the receiver's charge. An enlargement has been ingrafted on this rule by some courts, which hold that, if the trust funds have been applied to the payment of the debts of the insolvent, it will be sufficient to authorize the amount of the trust funds so misapplied to be charged as a preferential claim upon the assets in the receiver's hands, on the theory that the assets which have come into his hands have been increased to the ex-

tent that the trust funds have been applied to the payment of the insolvent's debts. It may well be doubted whether the doctrine of this class of cases is sound, for it is by no means certain that the assets of the insolvent which finally came into the hands of the receiver have actually been increased by the application of the trust funds to the payment of the insolvent's debts. However, it is not material to the decision of the present case to determine this question.

Another rule has been established, which has been regarded as influential in the determination of some cases, but which is not important here. The rule is one resting on the doctrine of presumptions. That rule is this: If a trustee has two funds in his possession or on deposit, one a trust fund and the other his personal funds, moneys drawn by him for his private use, although purporting to be drawn by him in his trust capacity, will be charged to his personal funds or deposit. In the present case there is no evidence tending to prove that Mr. Haughey had any money on deposit to his personal credit in the bank at the time he drew his two checks as trustee. These checks were drawn by him in his trust capacity, and were paid by transferring from the trust fund standing in his name $9,000 to his individual credit; and these sums of money represented by these two checks were drawn from the bank by him on his personal checks, and went to pay his private debts, and not those of the bank. Hence no part of the trust funds was withdrawn in order to pay the debts of the bank, or otherwise went to swell the amount of the assets which came into the hands of the receiver. The testimony not only fails to trace the trust funds so misapplied into the receiver's hands, but, on the contrary, it shows that no part of such misapplied trust funds ever came into his hands; and it further shows that the bank received no benefit from the breach of trust complained of. The $9,000 of trust funds remaining in the bank at the time of its failure came into the possession of the receiver as a part of the mass of assets received by him. The complainant is entitled to have $9,000 of its claim paid in full as a preferential claim. The remaining $9,000 is allowed as an unpreferred claim, to be paid pari passu. Let a decree be prepared accordingly.