## CITY OF MARQUETTE v. WILKINSON.

1. TRUSTS—BANK DEPOSITS.
    City funds received on deposit by a banker, but redeposited by him in other banks under an arrangement for sharing in the deposits, under which he receives from them the same interest that he pays the city, and agrees that they shall be withdrawn only to pay city orders, are held in trust for the city as against his assignee for creditors.

2. SAME—MATTERS WITHIN KNOWLEDGE OF DECEASED—WHO ARE OPPOSITE PARTIES.
    W., a private banker, with whom city funds were deposited, agreed with two other banks that a part of the deposit should be placed with each, and should be withdrawn only for the purpose of paying city orders. With this understanding, certain officers of the two banks became sureties to the city for the deposit with W. Shortly before his death, W. made a general assignment for the benefit of creditors, and the de-

posits in tne two banks, being in his individual name, were
claimed by the assignee as assets of the estate.   The city, upon
a bill filed by it, to which the banks and the assignee] were
made parties, to establish its right to the deposits as trust
funds, was permitted to introduce the testimony of the bonds-
men to show the arrangement under which the redeposits
were made.   *Held* (per GRANT, C. J., and MOORE, J.), that
the contingent liability of the bondsmen did not render them
opposite parties, incompetent under 3 How. Stat. § 7545, to
testify to matters equally within the knowledge of deceased.

3. SAME—KNOWLEDGE OF BENEFICIARY.
   A *cestui que trust* is not debarred from enforcing the trust
   through ignorance of it at the time of its creation, but may
   enforce it whenever he ascertains its existence.

4. SAME—RESTRAINT OF COMPETITION—PUBLIC POLICY.
   To prevent competition in securing a deposit of city funds, a
   private banker agreed with two other banks that, in consid-
   eration of their offering a lower rate of interest than he, the
   deposit should be equally distributed among the three, and
   that he would not withdraw any of it from them except for the
   purpose of paying city orders.   *Held*, that the invalidity of
   the agreement on grounds of public policy could not be set up
   to defeat the city's claim to the funds, since the city alone
   had a right to complain of it.

5. SAME—PURSUIT OF FUND—SECURITY.
   A *cestui que trust* may pursue the trust fund regardless of any
   security he may have by way of bonds.

6. CONTRACTS—ASSIGNABILITY.
   A contract between a city and an individual by which the latter
   is to receive and safely keep the funds of the former, to pay
   them out on drafts of the city, and to return the balance on
   the expiration of the contract, is a personal contract, and not
   assignable.

Appeal from Marquette; Stone, J.   Submitted Novem-
ber 18, 1898.   Decided March 6, 1899.

Petition by the city of Marquette against Edwin C.
Wilkinson and Albert E. Miller, assignees of James M.
Wilkinson, deceased, the First National Bank of Mar-
quette, and the Marquette County Savings Bank, to reach
funds deposited by decedent in defendant banks, as be-

ing trust funds, to which petitioner is entitled as against decedent's general creditors. From a decree for petitioner, defendant assignees appeal. Affirmed.

James M. Wilkinson, deceased, was a private banker in the city of Marquette. Shortly before his death, and on January 22, 1898, he made a general assignment for the benefit of his creditors to the defendants Edwin C. Wilkinson and Albert E. Miller. The assignment contained no schedule of assets.

On April 29, 1897, the petitioner, the city of Marquette, entered into an agreement with Mr. Wilkinson for the care and custody of its funds upon the execution and delivery of a bond in the sum of $75,000, with sureties, to be approved by the common council. The material part of this agreement is as follows:

"The said James M. Wilkinson agrees to receive and safely keep all such moneys and funds of said city as may be offered or deposited by said city and the treasurer thereof, and to reimburse and pay the same to said city, the treasurer thereof, his successor in office, or whoever may be lawfully entitled to receive the same, whenever called for; and to pay interest on such moneys and funds so deposited with him at the rate of two per cent. per annum on all daily balances which shall at the close of business each day equal or exceed the sum of two thousand dollars ($2,000), but no interest to be paid on any balance for any day in which said balance shall at any time fall below the sum of $2,000; all said interest to be paid on the first day of July next, and quarter-yearly thereafter, or at any other time when the account may be closed. It is mutually agreed by and between the respective parties hereto that said James M. Wilkinson shall at all times keep a true and just account of all moneys and funds deposited by the said city and the treasurer thereof, as aforesaid, and render to said treasurer monthly statements thereof; and that the said James M. Wilkinson shall at all times honor and pay all proper drafts and checks of the said city and the treasurer thereof, as aforesaid, to the amount of the moneys and funds so deposited with him as aforesaid."

A bond was executed and approved by the common

council, signed by C. H. Call, S. R. Kaufman, E. H. Towar, and A. Matthews as sureties. Messrs. Call and Kaufman were officers of the defendant savings bank, and E. H. Towar an officer of the defendant national bank. The bond referred to the contract, and was conditioned that Wilkinson should "well and truly pay, or cause to be paid, on demand, to said city corporation, or proper officer thereof, or person entitled thereto, all such sums of money . as shall be deposited with him by said city treasurer." The city and Mr. Wilkinson had made similar contracts for the years 1895 and 1896.

The three banks had entered into an agreement by which all real competition for the keeping of these funds was prevented. Each bank put in a bid with the understanding that Wilkinson should bid 2 per cent. as interest for the funds deposited, that the other banks would make lower bids, and that he should deposit one-third of the funds in each of the other banks, and that each bank should pay him 2 per cent. on such deposits,—the same which he paid the city. It was also agreed that no funds should be drawn from these two banks except to pay city orders. The arrangement between Wilkinson and the banks was carried out in good faith, and at the date of the assignment there was on deposit in each of said banks the sum of $10,000. Each bank kept the account in the name of James M. Wilkinson. When Mr. Wilkinson applied to Mr. Call and the others to sign his bond, they objected. He then stated to them his agreement with the other banks, and that the money so deposited would reduce their liability to one-third of the city funds, the money that was to be retained in his own bank. It was upon this assurance, and the understanding that it would protect the sureties of the amount so deposited, that the bondsmen executed the bond. · Mr. Wilkinson honestly and faithfully kept his agreement, and drew from these banks only such funds as were necessary to pay city orders, simultaneously drawing the like amount from each bank.

It appears from the finding and opinion of the circuit

judge that Mr. Wilkinson's liabilities at the date of the assignment were $130,000; that his assets were scheduled at something over $200,000, and appraised at about $146,000. It is insisted on the part of the assignees that these funds in question are a part of the general assets of Mr. Wilkinson's estate, and should be divided equally among his creditors. It is the contention of the city that they are trust funds; that they were deposited as such, and therefore belonged to the city. The defendant banks admit their obligation to pay the funds in their possession, but refused to pay them over except upon an order of the court of chancery, insisting that the assignees are not empowered to carry out the trust except as so authorized. The assignees instituted suits at law against the banks for the recovery of these funds, and recovered a judgment against the First National Bank for the money in its possession. At this stage in the proceedings this petition in chancery was filed, and further proceedings in the suits at law restrained. The object of this suit is to have the character of these funds declared, and the right thereto determined. The case was heard upon pleadings and proofs taken in open court, and decree entered for the petitioner, declaring that they were trust funds, and that the petitioner was entitled to them.

*George P. Brown* (*Charles R. Brown*, of counsel), for petitioner.

*A. E. Miller* (*A. B. Eldredge*, of counsel), for defendant assignees.

*Clark & Pearl*, for defendant national bank.

*George Hayden*, for defendant savings bank.

GRANT, C. J. (*after stating the facts*). Two questions are presented:

1. Five witnesses testified to the arrangement between Mr. Wilkinson and the banks for the deposit of these funds. Three are the bondsmen. It is insisted that their

119 MICH.—27.

testimony is incompetent under 3 How. Stat. § 7545, upon the theory that they are the real parties in interest, and are, therefore, excluded from testifying to matters equally within the knowledge of the deceased. Who are the real parties to this controversy, so as to make them "opposite parties," within the meaning of the statute ? The estate of Mr. Wilkinson is not interested, because it is not concerned in the distribution of the fund. It cannot be depleted by establishing this agreement. Neither will it be increased thereby. The assignees, in any event, would receive this money only to pay it out, either to the general creditors or to the *cestui que trust*. They are not, therefore, opposite parties, within the meaning of the statute. The banks are not interested, because, in any event, they must pay the money. They are, therefore, not opposite parties. The bondsmen are only contingently interested. They may or may not become liable. Should the assets be sufficient to pay all the liabilities,—and there is nothing upon this record to show that they are not,—no liability will attach. In any event, they are only liable for such deficit as may remain after the distribution of the entire estate among the creditors. It is true, they might be sued upon the bond before the estate is distributed, and in that event they would be subrogated to the rights of the city in the estate. This is a controversy between the creditors alone, to wit, the city and the other creditors; and the reason upon which the statute is founded, excluding testimony, does not apply. *McClintock's Appeal*, 58 Mich. 152; *Brown* v. *Bell*, Id. 58. The contingent liability of the bondsmen does not render them opposite parties, within the meaning of the statute, or disqualify them from testifying. *Schofield* v. *Walker*, Id. 96; *Latourette* v. *McKeon*, 104 Mich. 156.

2. Are these trust funds? The character of the fund in Wilkinson's bank, as between him and the city, is not here in controversy. Nor is it material that the city had no knowledge of the arrangement with the other banks. *Cestuis que trustent* are not debarred from enforcing a

trust through ignorance of it at the time of its creation, but may enforce it whenever they ascertain its existence. *Martin* v. *Funk*, 75 N. Y. 134 (31 Am. Rep. 446).

It is urged that this agreement is void as against public policy. If this be granted, neither Wilkinson, nor the banks, nor the bondsmen could take advantage of it. The city alone could rescind it on this account. It has not chosen to do so, and no other party can complain.

It is also clear that Wilkinson's assignees have no other or better title to these funds than did Mr. Wilkinson in his lifetime. Mr. Wilkinson had deposited these funds with the other banks as the city's money, to be paid out only for city purposes. They were not regular deposits to be drawn upon generally by Wilkinson, but were special deposits to be drawn upon for a special object. The funds had passed beyond Wilkinson's control, except under the terms of the agreement. Had Mr. Wilkinson given his check upon either of these banks to pay his personal debts, would the banks have been legally bound to pay? If the banks had been garnished for the personal debts of Wilkinson, could the garnishee suit be sustained? To so hold would be in direct violation of the express terms of the agreement, and defeat the very purpose for the deposit of these funds. If it be granted that the main purpose was to protect the bondsmen, the city is not thereby estopped to seek the fund thus deposited, and compelled to look to the bondsmen. Suppose the bondsmen had become irresponsible. The city would certainly then have a direct interest in the funds. It is, however, elementary that the *cestui que trust* may pursue his funds regardless of any security he may have by way of bonds.

To apply another test, suppose these bondsmen had declined to sign the bond unless Mr. Wilkinson would deposit with them two-thirds of the city funds, to be kept by them, and paid out only on his check or order to pay city liabilities. Here the main purpose undoubtedly would be to protect the bondsmen. Upon an assignment for the benefit of the creditors, would the bondsmen be

compelled to return the moneys to Mr. Wilkinson's assignees, to be distributed among the general creditors, rather than to devote them to the special purpose for which they were deposited? If not, then certainly there is no difference in principle when the funds are deposited with a third person to secure the bondsmen. Wilkinson, the banks, and the bondsmen saw fit to agree that, as fast as Wilkinson received the city's moneys, two-thirds thereof should be deposited with the defendant banks, *first*, to preserve them for the benefit of the city, and, *second*, to secure the bondsmen. The transaction was legitimate, and impressed upon the funds the character of a trust. The banks were under obligation, both moral and legal, to hold the funds, and pay them out for the specific purpose agreed upon.

We think our conclusion is clearly within the principle established by the following decisions: *Sherwood* v. *Central Mich. Savings Bank*, 103 Mich. 109; *Wallace* v. *Stone*, 107 Mich. 190; *Sunderlin* v. *Mecosta County Savings Bank*, 116 Mich. 281, and authorities there cited; *Cleveland, etc., R. Co.* v. *Hawkins*, 79 Fed. 29; *Montagu* v. *Pacific Bank*, 81 Fed. 602; *Libby* v. *Hopkins*, 104 U. S. 303; *People* v. *City Bank*, 96 N. Y. 32; *Martin* v. *Funk, supra; In re Gaffney's Estate,* 146 Pa. St. 49; *Davis* v. *Ney*, 125 Mass. 590 (28 Am. Rep. 272); *Reiff* v. *Horst*, 52 Md. 255.

The death of Wilkinson terminated the agreement with the city. It was a personal contract, and not assignable. The court of chancery has jurisdiction to determine the rights of the parties, and direct the completion of the trust.

Decree affirmed, with costs.

MOORE, J., concurred with GRANT, C. J.

HOOKER, J. We concur in the conclusion reached by the CHIEF JUSTICE. We are of the opinion that the evidence, aside from that given by the bondsmen, clearly

establishes the trust. We do not, therefore, pass upon the question whether the testimony of these bondsmen was admissible under the statute.

MONTGOMERY and LONG, JJ., concurred with HOOKER, J.