# JUNE TERM, 1903.*

## RETAN *v.* UNION TRUST CO.[1]

1. REGISTERS IN CHANCERY—DEPOSIT OF FUNDS.
   Where a register in chancery deposited money in a bank without the order of the court required by 1 Comp. Laws, § 420, but on the first day of each term exhibited to the court an account of all such moneys, as required by section 421, to which the court made no objection, the effect is the same as though an order for the deposit had been made in the first instance.

2. SAME—SPECIAL DEPOSITS—INSOLVENCY OF BANK.
   Money deposited in a bank by a register in chancery pursuant to such statute is not a special deposit, entitled to priority over others on the insolvency of the bank.

Appeal from Wayne; Donovan, J. Submitted April 8, 1903. (Docket No. 6.) Decided July 8, 1903.

Petitions by Ann Retan, Ralph E. Wisner, Thomas B. McGregor, and William H. McGregor, register in chancery, against the Union Trust Company, receiver of the City Savings Bank of Detroit, to have certain moneys deposited in said bank declared to be trust funds, to which petitioners are entitled as against the bank's general creditors. From orders denying the petitions, petitioners appeal. Affirmed.

*Kilpatrick & Pierpont,* for petitioner Retan.

*Clark, Jones, Allor & Bryant* (*Frank E. Robson,* of counsel), for petitioner Wisner.

*George W. Radford,* for petitioner Thomas B. McGregor.

---

* Continued from Vol. 133.
[1] Rehearing denied October 27, 1903.

. *C. D. Joslyn*, for petitioner William H. McGregor.

*Bowen, Douglas, Whiting & Murfin*, for defendant.

Moore, J.   Ann Retan is the widow of Benjamin S. Retan, who at the time of his death was a member of the Ancient Order of United Workmen of the State of Michigan, and the holder of a certificate issued by the grand lodge of said order, in which Ann Retan was made the beneficiary of the fund of $2,000 therein provided for.   A former wife and her sons made claim for said fund, and a bill of interpleader was filed in the Wayne county court, making said Ann Retan one of the defendants, and the fund of $2,000 was paid into court, which money was received by William H. McGregor, register in chancery, and by him deposited in the City Savings Bank; and such proceedings were had that on the 9th day of May, 1902, it was decreed by said court that said money be paid to said Ann Retan, less costs, and $266 to Colin McCormick, and $172 to Owosso Lodge, No. 48, of the Ancient Order of United Workmen, assigned to them to secure advances to said B. S. Retan and Ann Retan.

A controversy arose between John McGregor and Thomas B. McGregor, who were partners, which resulted in the filing of a bill in chancery by the former against the latter.   A receiver was appointed, who converted the assets into cash, amounting to $3,253.23, which amount was deposited with the register in chancery.   A decree was afterwards entered awarding the said money to Thomas B. McGregor, who on July 7, 1902, made a demand for the money upon William H. McGregor, register in chancery, who refused, assigning as a reason that, upon payment of said moneys by the receiver into court, on December 7, 1901, he had deposited said moneys in the City Savings Bank; that such bank had been approved by the court as the depositary; that subsequently the City Savings Bank had become insolvent, and its affairs and assets were in charge of the Union Trust Company, as receiver, appointed by the court below.

In March, 1900, the sum of $975 was placed in the hands of said McGregor, as county clerk and register in chancery, which sum was deposited by him in the said City Savings Bank. On the 10th day of January, 1902, it was decreed that the $975 be paid to Ralph E. Wisner, as trustee, for the benefit of Jeanette Goudreau and Hattie Goudreau.

February 10, 1902, the doors of the said bank were closed by direction of the banking commissioner, and on February 12, 1902, the Union Trust Company was appointed receiver of said bank.

This proceeding is had for the purpose of requiring the receiver to pay over said sums of moneys in full. In the matter of the petition of Ann Retan and Ralph E. Wisner, the court entered an order denying the prayer of the petitioners. In the matter of the petition of Thomas B. McGregor, the order, at the request of counsel, was more formal, and the judge held:

"*First.* The money deposited by the county clerk was legally done under court sanction, duly obtained.

"*Second.* That William H. McGregor is not bound to pay over any money until received from the avails of said bank, and then only such proportion as he shall receive as depositor thereof.

"Petition denied."

From these orders the petitioners have appealed.

It is claimed by all of the petitioners that the funds mentioned are trust funds, and, though mingled with the funds of the bank, that they should still be considered trust funds, and paid in full. It is the claim of Mr. McGregor that it was the duty of the register to obtain an order of the court designating the bank in which he should deposit the fund. This the register did not do, but deposited the money in the City Savings Bank under an arrangement made at the beginning of his term of office; notifying the bank, however, of the character of the fund, and the authority of the court over it, under the statute. That the court, the register in chancery, and the bank, in effect, undertook to comply with the terms and spirit of

the statute, and, whether the statute was strictly complied with or not, the bank had full notice of, and was bound by, the statute, and no act by either the register in chancery or the bank can destroy the trust character of the fund, and the consequent liability of the receiver to pay it over in full. It is further claimed on the part of Mr. McGregor that if this court should reach the conclusion that, owing to the failure of the register to comply with the statute in dealing with the bank, this trust fund is lost as such, then the register, William H. McGregor, and his sureties, should be held responsible, the same as though he had converted the fund to his own use in total disregard of his official duty.

In order to dispose of the case, a brief statement of the important facts, beyond what have heretofore appeared, is necessary.

When Mr. McGregor came into office as county clerk and register in chancery, his predecessor in office had on deposit with the City Savings Bank quite an amount of money. This money was placed to the credit of William H. McGregor, county clerk; and, when other sums were received by him, they were deposited in the bank, and carried to his credit, as stated above. The funds were mingled with the commercial funds of the bank. The bank had full knowledge of the character of these funds. No formal order was ever made by the court, requiring the county clerk to make these deposits in this bank; but upon the 1st of April, 1901, September 20, 1901, and January 7, 1902, the county clerk made a statement to the presiding judge of the court of which he was clerk, each of which was substantially like one that reads as follows:

"DETROIT, Jan. 7, 1902.

"Hon. R. E. FRAZER,

"Presiding Circuit Judge.

"*Dear Sir:* I attach herewith the quarterly statement of moneys deposited in my hands as clerk and register in chancery, showing a total of $19,107.17. You will find below certificates from the cashiers of the City Savings Bank and the Michigan Savings Bank, certifying as to the

amounts deposited in each bank, which, added together, make the amount above referred to.   The statement also shows an amount of $22,486.92, being the amount deposited in the People's Savings Bank in the Casserly estate, also certified to, but which amount, or any portion thereof, cannot be withdrawn except upon your order.   All of which is respectfully submitted.

"Respectfully yours,
"WM. H. McGREGOR,
"County Clerk,
"By CHARLES H. AUSTIN,
"Deputy Clerk."

"I hereby certify that there is deposited in this bank, to the credit of Wm. H. McGregor, county clerk, the sum of $16,145.17.

"H. R. ANDREWS,
"Cashier City Savings Bank."

"I hereby certify that there is deposited in this bank, to the credit of Wm. H. McGregor, county clerk, the sum of $2,962.00.

"GEORGE WILEY,
"Assistant Treasurer Michigan Savings Bank."

"I hereby certify that there is deposited in this bank, to the credit of Wm. H. McGregor, county clerk, the sum of $22,372.38.

"M. W. O'BRIEN,
"President People's Savings Bank."

Attached to this was a detailed statement of the number of the case, and the amount in the bank on account thereof, so that the judges were fully advised of the action of the county clerk and of the custodian of these funds.

It is claimed what was done did not meet with the requirements of the statute, which reads as follows (1 Comp. Laws):

"SEC. 420. All moneys brought into the court for or by any suitor, and paid to the register, shall be deposited in such banks or safely kept in such other manner as the court shall direct.

"SEC. 421. On the first day of the term of the court, the register, at the place where the same is held, shall exhibit the account kept by him of all such moneys, and also his bank account, in case such moneys shall have been deposited in a bank.

"SEC. 422. Every such bank account shall be accompanied by a certificate of the cashier of the bank in which the deposit is made, that the total amount stated therein to be deposited is actually in the bank, placed to the credit of such register as register in chancery of the proper county, and not mingled with any other account.

"SEC. 423. No money brought or paid into the court, and deposited in any bank to the credit of any officer of the court, shall be paid out by such bank, without the production of the order of the court, authenticated by the signature of the circuit judge.

"SEC. 424. Each circuit judge may cause any moneys brought into court pursuant to any order made by him to be invested or placed at interest, as he shall think proper; and the party bringing money into court pursuant to any order thereof shall in all cases be discharged from all further liability to the extent of the money so brought into court."

It is said the court never directed, as required by section 420, the deposit of any of the moneys in question in the City Savings Bank, and that the certificate of the cashier did not comply with section 422, in that it did not certify "that the total amount stated therein to be deposited is actually in the bank, placed to the credit of such register as register in chancery, * * * and not mingled with any other account." It is urged that the requirement that the funds could not be mingled with any other account, taken with the restriction placed upon the bank by section 423, that no money paid into court, and so deposited, "shall be paid out by such bank, without the production of the order of the court, authenticated by the signature of the circuit judge," prohibits any other conclusion than that the funds in controversy were a special deposit, and that the bank was a mere naked bailee of the fund; that it had no right to mingle the funds with its own, and the bank acquired no title to these funds that permitted the commingling of the same with its other funds, and acquired no right to use the same as a general deposit, and no right to subject them to any of its general liabilities.

It is apparent from what was done that the clerk of the court and the cashier of the bank made an attempt to

comply with the provisions of the statute, and, though the court did not designate a bank in which the clerk and register in chancery should deposit the funds which came to him before the deposit was made, we think it must be held that as the clerk advised the court in the manner he did, and the court made no objection to what he did, the effect was the same as though the order had been made in the first instance.

Are counsel right in insisting that the funds deposited by the clerk or the register in chancery must be regarded as a special deposit, and might not be loaned by the bank as its other deposits are loaned? The statute does not, in terms, require the fund to be kept intact, nor forbid the bank to loan it. These funds were not public funds, in the ordinary sense of that term. They belonged to individuals, but to whom was a subject of controversy until the court could inquire into and determine the matter. In the meantime they were in the custody of the clerk, either as clerk of the court or register in chancery. It is evident he could not retain them upon his person. What should he do with them? The legislature undertook to make provision for such a condition by the statute we have quoted. He put the money into a bank of such financial standing as to have the approval of the court when the register exhibited to it the status of the account. The money was deposited to the credit of the clerk of the court, who is register in chancery, and no part of it had been drawn out by him when the bank failed.

In *Perley* v. *County of Muskegon*, 32 Mich. 132 (20 Am. Rep. 637), it was said:

"The position of a public officer is peculiar, and the differences in different systems of statutes show that the responsibility is not by any means uniform. There seems to be nothing at common law which distinguished public treasurers or depositaries from any other financial managers. Where the same person receives and pays out money, the identity of the particular money received must almost necessarily be changed constantly, and it must have been customary for a long time to place such funds

in what may be supposed to be safer custody than private premises will always afford. The usual rule in regard to bailments exonerates the bailee who has done all that was in his power to prevent loss or accident, and there are authorities which, on this ground, discharge public treasurers from any greater liability. There are others which hold them to be debtors, and not bailees, and not exonerated under any circumstances.

"It is well settled that, in the case of all but special deposits, the money deposited becomes the property of the banker, and he becomes the debtor of the depositor. No depositor can, upon refusal to pay a check, replevy or seize the funds in the bank. His redress must be as a creditor in some form of action to enforce his debt. Statutes sometimes give priority to peculiar debts, but, except in such cases, the depositor has no advantage over any other creditors. *Commercial Bank of Albany* v. *Hughes*, 17 Wend. 94; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Foster* v. *Essex Bank*, 17 Mass. 479 (9 Am. Dec. 168); *Bank of Kentucky* v. *Wister*, 2 Pet. 318; *Graves* v. *Dudley*, 20 N. Y. 76; *Matter of Franklin Bank*, 1 Paige, 249 (19 Am. Dec. 413); *Chapman* v. *White*, 6 N. Y. 412 (57 Am. Dec. 464); *Downes* v. *Phœnix Bank*, 6 Hill, 297; *Swartwout* v. *Mechanics' Bank*, 5 Denio, 555.

"The deposit which creates these contract relations must be either the money of the officer or of the public, but it cannot usually be that of both. If an officer is required or authorized by law to make deposits in any particular place or with any particular person, he is usually, if not universally, protected from any further responsibility, so long as he leaves it there, and is not a guarantor of the safety of the deposit."

The case of *Otis* v. *Gross*, 96 Ill. 612 (36 Am. Rep. 157), is an instructive one. In that case the court designated the bank as the depositary of moneys coming to the hands of the clerk of the court, and by resolution the bank accepted the trust. Mr. Gross, the clerk, opened an account with the bank as clerk. The order of the court did not require that the moneys deposited by the clerk should be kept separate from the general funds of the bank, and they were not kept apart, but were mingled with the general funds of the bank. The bank failed, and a

receiver was appointed. The officers fled to avoid criminal prosecution. There was to the credit of the clerk of the court nearly $2,600 at this time, while the liabilities of the bank were nearly $2,000,000 in excess of its assets. The clerk filed a petition against the receiver to have the amount of the credit standing in his name declared a trust. In refusing to so declare, the court used the following language :

"But the controlling question in the case is whether, under the circumstances of this case, the court had the legal right to make the order. When the court seized the fund, it did so for the benefit of the creditors of the bank. The court, by its receiver, took possession of the property, and did so to be administered, paid, and distributed according to the equitable claims of all the creditors of the bank. By appointing the receiver and placing the fund in his hands, none, the slightest, change occurred in the rights of a single creditor, not even the court, as a depositor. It became the duty of the court to distribute the fund according to the rights of all creditors as then existed. If it was then right, according to equitable principles, to order that deposit to be paid in full, and others but a per cent. on their debts and deposits, the court should have so ordered; but, if such was not the legal duty, the mere fact that the court has acquired the possession of the fund confers no legal right to retain its deposit in full from the fund.

"The deposit, when made, passed into and became a part of the common fund of the bank, as it was, no doubt, intended; and the clerk thereby acquired a legal, and not an equitable, claim against the bank. His claim became the same and no more than that of the other depositors, —purely legal. It became an equitable demand for the first time when the court seized the fund for distribution among the creditors. And as all of the claims were legal, and on the same footing, and, so far as shown, no one having a superior natural equity, the court was required to adopt the rule that equality is equity, and distribute the funds amongst all *pro rata*. Each person, on becoming a creditor by deposit, loan, or otherwise, had the legal right to full payment of his entire debt; but, the fund being wholly insufficient for the purpose, equity requires each should receive his proportion of his debt. The mere fact that this was a fund in court does not give the claim of

the court a preference over other just claims. It may be a misfortune and a great hardship that the money was deposited in this institution, but it is equally so that the other creditors were so unfortunate as to repose confidence in dishonest or incompetent men, and deposit their means with them."

See, also, *McAfee* v. *Bland*, (Ky.) 11 S. W. 439; *Fletcher* v. *Sharpe*, 108 Ind. 276 (9 N. E. 142).

In the case at bar the bank did not treat the funds deposited by the clerk as a special deposit, but mingled them with the general funds of the bank. When the receiver was appointed, there was less than $40,000 in cash in the bank, while the amount to the credit of the clerk was upwards of $18,000; and other deposits which are claimed to be trust funds will aggregate a very large sum of money,—much in excess of the money on hand,—while the debts of the bank otherwise are greatly in excess of its assets.

We have not overlooked the cases cited by the counsel for petitioners, including the cases of *City of Marquette* v. *Wilkinson*, 119 Mich. 413 (78 N. W. 474, 43 L. R. A. 840), and *Board of Fire & Water Com'rs of Marquette* v. *Wilkinson*, 119 Mich. 655 (78 N. W. 893, 44 L. R. A. 493), but do not think they sustain the contention of petitioners, as will appear by an examination of them.

There is nothing in the statute to indicate that it is the duty of the bank, when the clerk or register makes a deposit, to keep that specific fund on hand; but it is provided that the statement of the clerk to the court must be accompanied by a statement of the cashier, not that the specific fund deposited by the clerk is in the bank, but that the total amount stated therein to be deposited is actually in the bank, placed to the credit of such register,—implying that the deposit made may be used by the bank as other deposits are used.

It is unfortunate for these petitioners that their money was in this bank. It was also unfortunate for all its depositors. The fund was put into the bank at a time

when it was supposed by the banking department of the State, as well as by the court and the clerk of the court, to be worthy of public confidence.

Under the facts disclosed by the record, we think the court below made a proper disposition of the case.

Decree is affirmed.

The other Justices concurred.