### In re SALMON et al.

### In re HENRY COUNTY et al.

(District Court. W. D. Missouri, W. D. April 30, 1906.)

1. BANKS AND BANKING—DEPOSITS—RELATION OF DEPOSITOR AND BANK—TAXES.

The deposit of money in a bank establishes the relation of debtor and creditor between the depositor and the bank, and this, though the fund deposited arose from taxes levied for municipal and school purposes.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, §§ 289, 290.]

2. CONTRACTS—AGREEMENT TO STIFLE COMPETITION—VALIDITY.
   The controlling banks in two of the largest cities and towns of a county, with a view to stifling competition among themselves whereby they would obtain the use of the county's moneys at reduced rates, agreed that one of them should obtain the money on an understood bid. In order to give color to a competitive bidding, another bank put in a bid lower than that it knew would be offered by the favored bank, with the distinct understanding that the latter, on becoming the depositary, should parcel out the deposits among all the banks in the combination in given proportions, the allottees paying on the respective sums the amount of interest the favored bank agreed to pay to the county, and that the funds paid under the agreement to the combining banks should only be subject to withdrawal on checks or warrants drawn by the county. *Held*, that such combination was a fraud on the county and invalid.
   [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 654, 657.]

3. BANKRUPTCY—BANK DEPOSITS—RIGHTS OF CREDITORS.
   Where several banks entered into an illegal combination to suppress bidding for county funds, under an agreement providing that, after the successful bidder obtained the funds, they should be apportioned among the members of the combination, and that such funds should not be subject to check, except for the payment of drafts and warrants drawn by the county, on the bankruptcy of the successful bidder, and the discovery of such scheme, the county was entitled to rescind and recover funds in the possession of another of the conspiring banks as against the bankrupt's general creditors.

See 143 Fed. 395.

I. P. Ryland, for trustee in bankruptcy.
James D. Lindsay, for Henry county.
C. A. Calvird, for Citizens' Bank of Clinton, Mo.

PHILIPS, District Judge. This cause has been submitted upon an agreed statement of facts filed herein, to which reference is made, the substance of which is that at the May term, 1903, of the county court of Henry county, Mo., the court caused notice to be published, as required by the state statute, advertising for bids from banks and others to be designated as the county depositary of the public funds of the county; the law providing that the bank offering the largest rate of interest for said deposits should be designated the county depositary and receive the county deposits. Prior thereto an agreement existed between the firm of Salmon & Salmon, private bankers, the Citizens' Bank of Clinton, Mo., and the Citizens' & Farmers' Banks of Windsor in said county, to the effect that said four banks, being the principal banks in said towns at the date of the submission of the bids, should not compete with each other for said funds. It was agreed that said bank of Windsor would not submit any bids; that the Citizens' Bank of Clinton should submit a bid a little less than that bid by Salmon & Salmon, so that the latter might become the highest bidder, and thereby become the depositary of said funds; and that, after the funds were so received by Salmon & Salmon, they should be apportioned among the respective banks in a designated proportion. At said May term, 1903, of the county court, the Citizens' Bank submitted a bid of 2¼ per cent. on daily balances for the privilege of being designated said depositary, and Salmon & Salmon submitted

a bid of 2⅓ per cent., and upon the submission of such bids the award was made to said Salmon & Salmon, who filed their bond as such depositary in the sum of $200,000, with approved security. This bond required Salmon & Salmon, upon the presentation of all checks drawn upon them as such depositary by the treasurer of the county, to pay the same. Thereafter the funds of the county were so deposited with said Salmon & Salmon up to the 20th day of June, 1905. A written agreement was entered into between Salmon & Salmon and said Citizens' Bank of date July 1, 1903, reciting the fact of said Salmon & Salmon becoming the depositary of said county funds, by which Salmon & Salmon agreed to keep on deposit with and permit the Citizens' Bank to use a certain portion of the county funds, to be determined in a specified manner; the Citizens' Bank agreeing to pay for the use of said money the contract rate of interest at which the award was made to Salmon & Salmon, to be paid monthly in the same manner as the depositary was to pay Henry county. The deposits made by the county as aforesaid consisted of currency, checks, and drafts, such as are usually deposited in the ordinary course of business with banks. The total of these deposits for the period indicated was approximately $320,000, and during that period the county drew its checks on the depositary, which were paid to the amount, approximately, of $700 more than the deposits within the same period. There was, however, on June 1, 1903, on deposit with Salmon & Salmon to the credit of the county the sum of $64,464.69; and on June 20, 1905, the balance to the credit of the county was $63,976.77. In pursuance of the said agreements, Salmon & Salmon deposited with the Citizens' Bank funds by cashiers' checks, which the latter bank kept on its books as a special account with Salmon & Salmon therefor. The agreement was that the funds so received and held by the Citizens' bank were not to be checked upon by Salmon & Salmon in the usual course of business, but only for the purpose of responding to warrants or checks drawn by the county upon Salmon & Salmon.

On June 20, 1905, Salmon & Salmon became insolvent, and at the suit of creditors, instituted in the state circuit court, a receiver was appointed for them. At that time the sum of $16,000 was on deposit with the Citizens' Bank under the terms of the aforesaid arrangement between it and Salmon & Salmon. Afterwards Salmon & Salmon, on petition of certain creditors, was adjudged bankrupt in the United States District Court for this District. The said balance so found in the possession of the Citizens' Bank at the time of the insolvency of Salmon & Salmon was claimed by the trustee in bankruptcy and also by Henry county. The question as to which of the claimants is entitled to this fund was brought into this court by appropriate pleadings, and by consent of the parties submitted to its determination.

It is conceded by the respective counsel in this case that the well-settled rule of law is that a deposit of money in a bank or with a banking concern establishes the relation of creditor and debtor between the depositor and the depositary. The deposit does not partake

of the nature of a trust fund, but becomes an asset of the bank, whereby Salmon & Salmon became a simple debtor to the depositor, subject to its call check for the payment thereof. And it may also be conceded that, although the fund so deposited arose from taxes for municipal or school purposes, it did not alter the relation of mere creditor and debtor, and that in case of bankruptcy of the depositary such depositor is not entitled to any preference over other creditors of the bank in the distribution of the assets of the estate. Multnomah County v. Oregon National Bank (C. C.) 61 Fed. 912; Spokane County v. Clark (C. C.) 61 Fed. 538; Brown v. Board of Commissioners (Kan. Sup.) 50 Pac. 888; Board of Commissioners v. American Loan & Trust Company (Minn.) 78 N. W. 113; Hall County v. Thomssen (Neb.) 89 N. W. 393; In re State Treasurer's Settlement (Neb.) 70 N. W. 532, 36 L. R. A. 746; McNulta v. West Chicago Park Commissioners, 99 Fed. 900, 40 C. C. A. 155.

In the view I take of the merits of this controversy it is not essential to discuss the question argued by the respective counsel as to whether or not the relation of cestui que trust and trustee existed between Salmon & Salmon and the Citizens' Bank, or whether or not the funds in the hands of the Citizens' Bank were so impressed with an implied trust as to enable Henry county to pursue it in the hands of the bank. The scheme of the statute authorizing the deposit of county funds with a depositary paying the highest rate of interest therefor had among its objects to put an end to the practice of county treasurers enriching themselves off of the use of the public funds of the county, and to secure the profit of such letting to the county. The purpose and object of letting the funds go to the highest and best bidder was to secure competition among the banks, whereby the county would realize the highest rate of interest obtainable in an open and fair contest. From the agreed statement of facts it appears that the controlling banks in two of the largest cities or towns in Henry county, with a view to stifling competition among themselves, whereby they would obtain the use of the county moneys at reduced rates, entered into a secret combination among themselves, whereby the banking institution of Salmon & Salmon should certainly obtain the money on an understood bid. To give color only to a competitive bidding, the Citizens' Bank put in a bid lower than that it knew would be offered by Salmon & Salmon. The distinct understanding and agreement among themselves was that, while Salmon & Salmon would thus become the ostensible depositary of the entire public funds of the county, the same should thereafter be parceled out among all the banks in the combination, in given proportions; the allottees paying on the respective sums the amount of interest Salmon & Salmon promised to pay to the county. That such a combination was a fraud upon the county and void, as in contravention of sound public policy, hardly needs the citation of authorities to maintain. It is a uniform, inflexible rule of law that all such combinations, the effect of which is to stifle competition in bidding at public or private sales, or in the letting of public works, and, on principle, in the letting to hire of public moneys, are immoral, vicious and void.

Engelman v. Skrainka, 14 Mo. App. 438; Wooton v. Hinkle, 20 Mo. 290; Hook v. Turner, 22 Mo. 333; Durfee v. Moran, 57 Mo. 374-379; Swan v. Chorpenning, 20 Cal. 182; Gibbs v. Smith, 115 Mass. 592; People v. Stephens, 71 N. Y. 527; Finck v. Granite Co., 187 Mo. 244, 86 S. W. 213, 106 Am. St. Rep. 452; Bishop on Contracts, § 528; Greenhood on Public Policy, etc., p. 183 et seq. The common sense of justice accords to the county every reasonable measure of protection against such deception and imposition practiced by the parties to such illicit combination. It had the right to rescind the contract between it and Salmon & Salmon, and recall the money deposited with them, whenever it became advised of that compact among the banks. But for the failure of Salmon & Salmon, and the passing of their books under public scrutiny, this secret compact and the allotment of county funds to the Citizens' Bank would not have become known. When it was displayed the county had the right to go after the wrongdoers for restitution.

It is a well settled rule of law that, where A. sells B. goods on credit, in ignorance of the fact that C. is a dormant partner of B, the vendor may maintain action against C. for the price of the goods, on the ground that B. was acting as the agent of the secret partner. Richardson M. & Co. v. Farmer, 36 Mo., loc. cit. 36, 37, 88 Am. Dec. 129. Akin to this principle, it has been held that, where a vendor assumes to convey land, of which he represents himself to be the owner, but to which he has no title, and receives a deposit of the purchase money, really for the benefit of himself and another party secretly interested in the transaction, he acted as agent for such third party who received a share of the deposit, and that both parties are liable to the vendee jointly for the sum so received by the ostensible vendor. Dashaway v. Rogers, 79 Cal. 211, 21 Pac. 742. So, when the Citizens' Bank entered into a secret compact with Salmon & Salmon to obtain the use of the public moneys of Henry county at a low rate of interest, to be effected by suppressing competitive bidding therefor, and it put forth the concern of Salmon & Salmon to thus obtain the money, Salmon & Salmon were in fact and law acting as the agent of the Citizens' Bank to thus obtain for its benefit a designated portion of said funds. It in fact and law was a concealed principal as to the amount so allotted to it.

Salmon & Salmon were not to, and did not, receive any benefit from the money allotted, under the agreement, to the Citizens' Bank. When that fact became known to the county, after the declared bankruptcy of Salmon & Salmon, and it so acquired the money, why should the county not have the right to go directly after the Citizens' Bank, a principal in fact, for the $16,000 found in its hands? Salmon & Salmon were not entitled to that money as against the county, and the trustee in bankruptcy acquired no greater right thereto than had Salmon & Salmon at the time of the institution of the bankruptcy proceeding against them and the adjudication thereunder. York Manufacturing Company v. Arthur Cassell et al. (recently reported in advance sheets of the Supreme Court of the United States, No. 208, October Term, 1905) 26 Sup. Ct. 481, 50 L. Ed. ——.

No general creditor of Salmon & Salmon could claim that fund in the hands of the Citizens' Bank as against the county, it seems to me, for two reasons: (1) Because the bank was, in contemplation of law, a principal debtor of the county therefor; and (2) because, under the agreement between Salmon & Salmon and the Citizens' Bank, the money held by the bank was only demandable by Salmon & Salmon to meet warrants drawn by the county on the fund. City of Marquette v. Wilkinson, 119 Mich. 413, 78 N. W. 474, 43 L. R. A. 840.

It results that my conclusion on the law arising from the agreed statement of facts is that the county of Henry is entitled to the $16,000 in the hands of the Citizens' Bank of Clinton, Mo. It is accordingly so ordered.