PUNDMANN *et al.* v. SCHOENICH, *Administrator of* MERTEN & COMPANY, *Appellant*.

Division Two, May 17, 1898.

1. **Officer:** PUBLIC MONEY: BALANCE: PRIMA FACIE CASE. An officer, intrusted with public funds, and his sureties, are *prima facie* bound for the balances for which his own official books show him indebted.

2. **Trust Fund:** CITY TREASURER: CONVERSION TO USE OF PARTNERSHIP. The treasurer of St. Charles deposited the city's funds in banks in the name of a partnership of which he was the manager, or commingled them with the money in the firm's drawer, and they were paid out by checks drawn in the name of the firm, with the knowledge and consent of the other members of the partnership.

144  149
152  142
144  149
158  199
86a  183
86a  429
144  149
90a  262

*Held*, that this was a conversion by the firm of the city's money. *Held*, that said funds were in the hands of the firm a trust fund, and also that the sureties, who paid the amount for which said treasurer was a defaulter, have a special lien on the assets of the partnership to reimburse themselves. The administrator, who took charge of the estate at the death of one of the partners, took it burdened with that trust.

3. ——: ——: ——. When the funds of the city went into the assets of a firm and swelled its property to that extent, all the property of the firm is chargeable with such amount, the city being a preferred creditor and entitled to a special lien on the firm's entire property. Nor does it lessen the lien that the city is unable to trace such funds or ascertain what property was secured by the firm with them.

*Appeal from St. Charles Circuit Court.*—Hon. E. M. Hughes, Judge.

Affirmed.

*C. Daudt* for appellant.

(1) The default was during Hackmann's first term of office; or at least not clearly proved to have been during his second term, hence plaintiff's were not liable to replace the peculated funds. *State ex rel. v. Branch,* 126 Mo. 498; *State ex rel. v. Branch,* 134 Mo. 592; *State to use v. Jones,* 89 Mo. 470; *State to use v. Atherton,* 40 Mo. 210.    (2) In order to fasten a lien, or trust, for converted trust funds, it is necessary that the trust funds are clearly identified or traced into an ascertainable property or product. It is not enough to show that they went into the general estate of the person whose property it is sought to charge. 2 Story Eq., sec. 1259; *Buck v. Ashbrock,* 59 Mo. 200; *Dailey v. Dailey,* 125 Mo. 96; *Huetemann v. Vieselmann,* 48 Mo. App. 590; *Philips v. Overfield,* 100 Mo. 474; *Englar v. Offiut,* 70 Md. 78; *Slater v. Oriental Mills,* 27 Atl. Rep. (R. I.), 443; *Non Stock Silk Co. v. Flanders,* 87 Wis. 241; *In*

*re Plankington Bank*, 87 Wis. 378; *Burnham v. Barth*, 89 Wis. 367; *Lathrop v. Bampton*, 31 Cal. 17; *Little v. Chadwick*, 151 Mass. 109; *Cavin v. Gleason*, 105 N. Y. 256; *Bank v. Armstrong*, 39 Fed. Rep. 684; *U. S. v. Waterborough*, Daveis, 154; *Bank v. Goetz*, 138 Ill. 127; *Wetherell v. O'Brien*, 140 Ill. 146; *Mut. Acc. Ass'n v. Jacobs*, 141 Ill. 261; *Calhoun v. Bank*, 20 S. E. Rep. (S. C.) 153; *Thompson's Appeal*, 22 Pa. St. 16; *Hopkin's Appeal*, 9 Atl. Rep. 867; *Carmany's Appeal*, 166 Pa. St. 622; *Bank's Appeal*, 93 Pa. St. 107; *Neely v. Rood*, 54 Mich. 134; *Sherwood v. Bank*, 53 N. W. Rep. 922; *Shields v. Thomas*, 71 Miss. 260; *Bank v. Ins. Co.*, 104 U. S. 54; *Ellison v. Moses*, 95 Ala. 221; *Goldwaite v. Moses*, 99 Ala. 497; *Bank v. Dowd*, 38 Fed. Rep. 172; *Elev. Co. v. Clark*, 53 N. W. Rep. 175.

*Theodore Bruere & Son* for respondents.

(1) The plaintiff sureties were clearly liable under their bond for the defalcation of John F. Hackmann as city treasurer. *State ex rel. v. Branch*, 134 Mo. 600; *State ex rel. v. Dennis*, 58 Mo. App. 572; *State ex rel. v. Bilby*, 50 Mo. App. 167; *State ex rel. v. Drury*, 36 Mo. 281; *State ex rel. v. Berning*, 74 Mo. 94; *Tittman v. Green*, 108 Mo. 40; *State ex rel. v. Branch*, 112 Mo. 673; *Smith v. Gregory*, 26 Gratt. 248; *Ruffin v. Harrison*, 81 N. C. 208; *Ruffin v. Harrison*, 86 N. C. 190; *Gilmer's Adm'r v. Baker's Adm'r*, 24 W. Va. 72. (2) After plaintiffs made out a *prima facie* case that John F. Hackmann was a defaulter during his second term, the burden rested upon the defendant to show that the whole defalcation occurred during Hackmann's first term as city treasurer, and that plaintiff sureties were not liable on their bond executed for John F. Hackmann's second term. *State ex rel. v. Branch*, 134 Mo. 600; *State ex rel. v. Dennis*, 58 Mo. App. 572. The

default took place during John F. Hackmann's second term of office. (3) The trial court's finding of the facts, even in equity cases, will be greatly deferred in the appellate court. *Rawlins v. Rawlins*, 102 Mo. 563; *Parker v. Roberts*, 116 Mo. 657; *Boyd v. Hesseltine*, 110 Mo. 203; *Mathias v. O'Neill*, 94 Mo. 520; *Taylor v. Cayse*, 97 Mo. 242; *Barlow v. Elliott*, 56 Mo. App. 374; *Clark v. Bank*, 57 Mo. App. 277; *Roberts v. Herryford*, 54 Mo. App. 365; *Toler v. McCabe*, 52 Mo. App. 532; *Masterson v. Railroad*, 58 Mo. App. 572; *Loring v. Atterbury*, 39 S. W. Rep. 773. (4) The money of the city of St. Charles was, with the knowledge and consent of his other two partners, put by its treasurer, John F. Hackmann, into the business of the firm of S. H. Merten & Company, and mixed up with their funds and converted within five months prior to the time defendant as administrator took possession of the assets of said partnership, and while it can not be identified or traced into an ascertainable property or product, it went into the general assets of the firm and increased them to the extent of $4,417.70. The firm having thus received the benefit of the unlawful conversion, equity charges its assets with the amount of the converted fund as a preferred demand. *Harrison v. Smith*, 83 Mo. 210; *Stoller v. Coates*, 88 Mo. 514; *Munro v. Collins*, 95 Mo. 33; *Snorgrass v. Moore*, 30 Mo. App. 232; *Cart Co. v. Stephens*, 32 Mo. App. 346; *Clark v. Bank*, 57 Mo. App. 281; *Hockensmith v. Hockensmith*, 57 Mo. App. 378; *Bank v. Sanford*, 62 Mo. App. 394; *Brick Co. v. Schoeneich*, 65 Mo. App. 283; *Leonard v. Latimer*, 67 Mo. App. 138; *Bank v. Ins. Co.*, 104 U. S. 67; *Peak v. Ellicott*, 30 Kan. 156; *Thompson v. Bank*, 8 Atl. Rep. 97; *Plow Co. v. Lamp*, 45 N. W. Rep. 1049.

GANTT, P. J.—Plaintiffs were the securities on the bond of John F. Hackmann, the treasurer of the

city of St. Charles. Hackmann was a member of the firm of S. H. Merten & Company, composed of Stephen H. Merten, William Hackmann and John F. Hackmann, which firm operated a steam flour mill and did a general milling business. John F. Hackmann was the bookkeeper and general manager of the concern, and as such received and paid out all moneys of the firm. With the full knowledge and consent of his partners, John F. Hackmann put the city's money which he had received as treasurer into the partnership business. He was twice elected treasurer of the city, his first term being for the years 1891 and 1892, and his second term for the corporate years 1893 and 1894. He qualified on the eighteenth day of April, 1893, and executed his bond in the penal sum of $30,000, wherein he was principal and S. H. Merten, William Hackmann, William Pundmann, Henry Grovefeld, F. W. Banze, Herman D. Bruns and A. R. Huning were sureties. John F. Hackmann took charge of and administered the office until his death on September 18, 1893. He deposited some of the city's money in the three banks of the city of St. Charles but by far the greater portion was deposited by him in the Union Savings Bank in his firm's name or was mixed with the firm's money in their drawer at the mill. When city warrants were presented he or his partners would pay them out of said drawer or with firm checks on the Union Savings Bank. At the date of his death $1,039.04 of the city money was found deposited in the three banks to the credit of the city, and it was found that he was a defaulter to the amount of $4,417.70. This sum the plaintiffs, who were his sureties, after a full investigation, paid to the city, the other two sureties, Merten and Hackmann, being insolvent. The children of John F. Hackmann afterward voluntarily paid the plaintiffs $525, thus leaving $3,892.70 due plaintiffs.

The partnership estate of S. H. Merten & Company is insolvent, paying about twenty-four cents on the dollar. At the time of the trial in December, 1894, the administrator had received in cash due said estate $20,536.84, of which $12,873.67 had been collected by him on accounts and notes due the firm. The plaintiffs brought this action in equity to have the said balance of $3,892.70 declared a trust fund, and asked to be subrogated to the equitable right of the city and to require said administrator of the partnership estate to allow and pay the same as a preferred demand. The administrator, for answer, admits that he is administrator of the partnership estate, and that he has a large fund belonging to said estate amounting to $10,000. Otherwise denies each and every allegation in plaintiff's petition. The defendant's real contention is that the defalcation occurred during Hackmann's first term as city treasurer, and, if so, plaintiffs were under no obligation, legal or equitable, to pay the deficit to the city, and any way that the amount of the city money that went into the partnership assets of S. H. Merten & Company is too uncertain and indefinite to form the basis of an equitable lien such as is sought by plaintiffs in this case.

The learned counsel for the defendant concedes that on the issue as to whether the conversion of the money to the firm's use occurred during the first or second term, there is a conflict in the evidence, and the circuit court which heard the evidence found that the misappropriation occurred during the second term. There is no dispute of the amount of the shortage. Upon a careful review of the abstract of the evidence, it seems to us the circuit court could not have found that this defalcation or conversion occurred during the first term of the treasurer. In the treasurer's settlement made July 1, 1893, he charged himself with

$12,432.89, the aggregate of three funds in his hands. Adding to this the amount he afterward received and deducting from the sum of these the amount of warrants paid by him since that settlement the balance is found for which the sureties were liable. *Prima facie* an officer and his sureties are bound for the balances for which his own official books show him indebted. There is in this case fortunately not the slightest suspicion as to the balance appearing on the books. The committee on accounts in the presence of the bondsmen and the administrator of Mr. Hackmann, examined the books and they found a balance of $5,456.75. Of this sum $1,038.04 was in the city banks and was collected by the successor of Hackmann, thus reducing the amount to $4,417.70. As already said the children paid $525 of this balance, leaving the balance $3,892.70, which the sureties paid. We find nothing substantial which rebuts this *prima facie* case. The sureties to avoid litigation promptly covered this sum into the treasury and come into a court of equity in such a manner as to commend their claim to favorable consideration. That the funds of the city in the treasurer's hands were a trust fund, no doubt whatever is or can be entertained. When they were misappropriated by the treasurer with the full knowledge and consent of his partners they continued in the hands of said firm to be trust funds, and upon the death of the treasurer and consequent dissolution of the firm when its assets went into the hands of the defendant as administrator of said partnership estate, he took the said estate charged with that trust. We have so recently reaffirmed the rule announced in *Harrison v. Smith*, 83 Mo. 210, and *Stoller v. Coates*, 88 Mo. 514, that when the general assets of an insolvent bank have received the benefit of the unlawful conversion of a trust fund, such bank or its assignee is chargeable with the amount of the con-

verted fund as a preferred demand, that we deem it useless to do more than reassert the rule. *The Evangelical Synod of North America v. Schoenich, Adm'r of Merten & Company*, 143 Mo. 652. The learned counsel for the defendant has found abundant authority to the contrary and contends that "neither the petition nor evidence shows that the trust funds in this case have been converted into an ascertainable product and that there is no fund into which they can be traced," but this objection was met and decided adversely to defendant in *Harrison v. Smith*, 83 Mo. 217, in these words: "Applying this principle to the case before us, where the trust money of plaintiff was mingled wrongfully, if not fraudulently, with funds of the bank and went into its business operations a very short time previous to the assignment of its effects, and while not clearly traceable to any particular asset of the bank, the fact remains that it went into its assets, and to the extent of $4,500 increased and swelled the volume of its assets, and it logically follows, from such application of the principle, that plaintiff was entitled to the relief prayed for." This is the doctrine of the Supreme Court of the United States as announced in *Bank v. Ins. Co.*, 104 U. S. 54, and is the more modern and equitable rule as shown by BURGESS, J., in *Evangelical Synod v. Schoenich*, this same defendant, at this term, in which he has collected all the cases. Adhering to that case and our own decisions therein approved, we affirm the judgment in this case. SHERWOOD and BURGESS, JJ., concur.