TIERMAN's EXECUTOR, Appellant, v. SECURITY BUILDING and LOAN ASSOCIATION No. 2.

Division One, November 14, 1899.

1. **Trust Funds: CONVERSION: RECOVERY.** Where the secretary of a building and loan association deposits money of the association to his individual credit in a bank, and it is mingled with other moneys deposited and credited to his individual account, it is not thereby converted to his individual assets which his executor after his death can claim against the association, but the association may recover the amount of such deposit from whatever balance remains in the hands of the bank to his credit at the time of his death, which the association's deposit created or helped to create.

2. ———: ———: ———: AGENT. And where the deposit was made by the secretary's clerk to the secretary's individual credit, the right of the association to its share of whatever balance remained in the bank to the secretary's credit at the time of his death, is the same as if he himself had made the deposit in his own name.

3. ———: BUILDING AND LOAN ASSOCIATION: BY-LAW. Nor is the relation existing between the secretary and the association changed from that of trustee and *cestui que trust* to that of debtor and creditor, by the fact that a by-law of the association required the secretary to "at least once a month promptly deposit with the treasurer all moneys received by the association," and the treasurer to deposit the moneys received by him from the secretary "in some bank to be designated by the board of directors." This by-law, assuming that the moneys of the association on their way from its members and borrowers to the designated bank would of necessity remain in the secretary's hands a short time, was simply intended to secure their prompt transmission by him to the treasurer.

4. ———: ———: OTHER CESTUI QUE TRUST NOT A PARTY. Nor can judgment for the association for the full amount of the specific fund thus deposited to the individual credit of the secretary be denied on the theory that he had mingled with this deposit, trust funds of other persons who are not parties to the suit, who do not interplead, and who are not shown by the pleadings or the evidence to have any interest in the balance of his deposit other than that of general creditors.

*Appeal from St. Louis City Circuit Court.*—Hon. Selden P. Spencer, Judge.

Affirmed.

Frank K. Ryan for appellant.

(1) Under the by-law of the association, directing Tiernan as its secretary to deposit at least once a month with the treasurer all moneys received for the association, the relation between the association and Tiernan in regard to the moneys so received was, because of the credit thus given, simply that of debtor and creditor, and not that of trustee and *cestui que trust.* Bank v. Armstrong, 148 U. S. 50; Bank v. Beal, 49 Fed. Rep. 606; Knatchbull v. Hallett, 13 Ch. D. 702. (2) Without taking into consideration the above mentioned by-law, still, in applying the rule set forth in Evangelical Synod. v. Schoenich, 143 Mo. 652, and in Pundmann v. Schoenich, 144 Mo. 150, to the fund here in question, which is made up entirely of different trust funds, the award to the respondent is excessive, inasmuch as same includes a large amount of trust funds rightfully belonging to other parties; such moneys or other parties having been deposited by Tiernan in the State Bank, subsequent to that deposited by him for respondent in the same account. Under such facts, as between different *cestuis que trust* whose money the trustee has paid into his own account at his bank, the rule is, as stated in Clayton's case (1 Mer. 572), so that the first sum paid in will be held to have been the first drawn out. Hallet's Est. in re Knatchbull v. Hallett, 49 L. J. Ch. 415; 13 Ch. D. 696; 42. L. T. 421; Brown v. Adams, 39 L. J. 67; Hancock v. Smith, 41 Ch. D. 456; Baker v. Bank, 100 N. Y. 31.

Lubke & Muench for respondent.

(1) It is immaterial whether Schramm intentionally or by mistake indorsed Tiernan's name as secretary upon the

check and then deposited it to Tiernan's individual credit. If Tiernan had survived, the discovery of the misapplication would have entitled the association to demand from him the prompt return to it of the sum which the check represented. Tiernan would not have been permitted by any court to reap any advantage from his clerk's action. And his executor, Mr. Tracy, is in no better position. The rule that an executor or administrator represents only the testator or intestate and that he can not impeach the latter's acts excludes him from claiming more than Tiernan could have done while living, and estops him from asserting that this money is a part of the estate to be administered by him. Brown v. Finley, 18 Mo. 375; George v. Williamson, 26 Mo. 190; Cheeley v. Wells, 33 Mo. 106; Merry v. Freeman, 44 Mo. 518; Jackman v. Robinson, 64 Mo. 292. (2) The check represented trust funds belonging to the association. And knowledge on the part of the other officers and directors of the association of their misappropriation, if there had been such, or even positive consent to such use of these funds by these officers and directors would have been unavailing against the association. The statute forbade any use of the money otherwise than as there directed; and nothing short of the consent of all the stockholders of the association would have legalized a loan of the funds to Tiernan or to any other member of the association or person or persons "on personal security or on leasehold." R. S. 1889, sec. 2811; Brick Co. v. Schoeneich, 65 Mo. App. 288. (3) If the executor had obtained possession of the entire deposit at the State Bank standing in the name of Tiernan at the time of his death, the association would still have been entitled to recover from him in equity these $3,231.25 as trust funds. And it is unnecessary to discuss the propositions stated in his counsel's brief, and the authorities there cited, whereby appellant endeavors to show that, notwithstanding the positive prohibitions of the statute, Mr. Tiernan, by his own act alone, could become a borrower

of, or debtor for, these funds without security and free of competition with the other stockholders of the association. Harrison v. Smith, 83 Mo. 217; Evangelical Synod v. Schoenich, 143 Mo. 663; Pundmann v. Schoenich, 144 Mo. 155; Bank v. Sanford, 62 Mo. App. 397. (4) Appellant's contention that the decree of the court below was excessive in awarding to respondent the full $3,231.25 is without merit. The fact that Tiernan collected for a number of parties an aggregate of $2,034.56 of rents and failed to account to them therefor is no ground for denying respondent full relief as a reward for its diligence. Who these parties were for whom these rent collections were made, whether or not they had overdrawn their accounts with Tiernan or held security from him and other elements bearing on their claims, did not appear in the pleadings nor in the evidence at the trial. Nanson v. Jacob, 93 Mo. 332; Slate Co. v. Cornice Co., 62 Mo. App. 569; Munday v. Leeper, 120 Mo. 417; 1 Story's Eq. Jurisp. (12 Ed.), sec. 64; Kroening v. Goehri, 112 Mo. 648; Bruce v. Vogel, 38 Mo. 105.

BRACE, P. J.—This is an appeal by John H. Tracy, executor of Joseph H. Tiernan, deceased, from a decree of the circuit court of the city of St. Louis, in favor of the Security Building & Loan Association No. 2, for the sum of $3,231.25, payable out of a fund of $3,561, brought into said court by The State Bank of St. Louis, in an action instituted by a bill of interpleader by said bank therein, against the said parties, and in which each of them interpleaded claiming said funds, the remainder thereof after payment of costs being awarded to the appellant.

There is no dispute about the facts in the case. In the year 1891, the respondent association was duly incorporated under the provisions of article IX, chapter 42, Revised Statutes 1889. By section 7 of its by-laws, it was provided that the secretary "shall at least once a month promptly deposit with the treasurer all moneys received by the association,"

and by section 8, that, "the treasurer shall receive from the secretary all moneys paid into the association and receipt therefor, and then deposit the same to its credit in some bank to be designated by the board of directors." The State Bank of St. Louis was designated by the board of directors as the depository of the association, in pursuance of the by-laws. Afterwards on the twelfth day of December, 1893, section 8 was amended so as to read as follows: "The treasurer shall receive from the secretary a duplicate ticket of deposit for the money deposited in some bank to be designated by the board of directors."

In August, 1895, the officers of the association were Leopold Fruend president, Joseph H. Tiernan secretary, and Andrew M. Blong treasurer. Tiernan was a real estate agent and a collector of rents, and in the transaction of his business as such had an office with a vault and safe, for keeping papers, moneys and valuables. He had an individual bank account with the State Bank of St. Louis, and a clerk named Schramm, who attended to his business and signed his name in his absence. The members of the association paid their monthly dues to Tiernan as secretary at his office, and these dues matured about the same day every month.

Prior to August 22, 1895, one William Holste had borrowed from the Security Loan & Building Association No. 2 a sum which, with interest, amounted to $3,231.25 on that date. The loan was secured by deed of trust on Holste's realty in St. Louis. Tiernan was then lying sick at one of the hospitals in St. Louis, and his business was being attended by his clerk, Mr. Schramm, who also performed Tiernan's duties as secretary of the association for the time being. Holste desired to pay off his debt and Schramm sent for Mr. Fruend, the president of the association, and the latter went to Tiernan's office, which was also regarded as the office of the association, and met both Holste and Schramm. The papers of the association were kept at this office. Holste tendered

in payment of his debt a check drawn by the St. Louis Trust Company. Fruend refused to accept the check until it was certified by the bank on which it was drawn, and Schramm then obtained this certification and the three parties visited the recorder's office where Fruend, as president, released the deed of trust given by Holste and accepted from him the check in form as follows:

"St. Louis Trust Company,

"No. 21587.                St. Louis, Aug. 22, 1895.

Pay to the order of J. H. Tiernan, Sec'y ($3,231.25),

Thirty-two Hundred and Thirty-one and 25-100 Dollars.

John D. Filley,

Secretary.

"To Commercial Bank,

St. Louis, Mo.

"L. Mitchell, Teller."

This check Fruend handed to Schramm with the direction, "Now go and deposit that check." Schramm took the check and the following day indorsed upon it "J. H. Tiernan, Sec'y," and also "J. H. Tiernan," and instead of depositing it at the State Bank to the credit of the association's account he deposited it there to the credit of Tiernan's individual account along with $400 in currency and five other checks aggregating $108. The bank collected the check from the Commercial Bank and carried the amount on its books to the credit of Tiernan's individual account. Tiernan remained at the hospital unable to transact business and died eight days thereafter. His estate was found to be insolvent. After his death the president and directors of the association first learned that Schramm had not deposited the check to the credit of the association and gave notice to the bank and claimed the amount out of Tiernan's account. The bank, to protect itself, instituted this suit against Tiernan's executor and the association and obtained a decree, authorizing it to deposit in court

all of the deposit balance in Tiernan's account after retaining an allowance for its attorney's fees and other items. This was the sum of $3,561 which the court afterwards disposed of by its decree upon the interpleas of the Loan & Building Association, and of Tracy executor.

Upon the trial of these interpleas the deposit and check account of Tiernan with the State Bank between August 23 and August 31, 1895, was examined and showed that the daily balances there to Tiernan's credit during that period exceeded the $3,231.25 claimed by the Loan & Building Association, and that subsequent to the deposit of the check of the association for that amount to the credit of Tiernan's individual account there was deposited and credited on that account the sum of $8,587.87, and there was checked out and charged the sum of $6,492.05.

(1) By the law under which the association was incorporated and governed, it is provided that the funds of such corporations shall be loaned only "on real estate security, or on the security of its own shares of stock" not exceeding the instalments actually paid on such shares. "Such corporation may, however, employ a portion of its capital stock in the purchase of real estate and the erection of buildings thereon for rent or otherwise," and, "if at any time it shall happen that there is no demand by the shareholders for the funds of such corporation, then such funds may be loaned to others who are not shareholders, at such rate of interest as the directors may fix," but "no loans shall be made to members or others on personal security or on leasehold." [R. S. 1889, sec. 2811.] That the directors of the association shall hold stated meetings, at which such loans shall be made and secured as therein provided (R. S. 1889, sec. 2812), and that all loans to members must be secured by "first mortgage or deed of trust on real estate . . . accompanied by a transfer and pledge of the shares of stock of the member," unless the loan did not exceed three-fourths of the withdrawal value of the shares.

[Laws 1895, p. 109, sec. 10.] The funds of a building and loan association in the hands of its officers is a trust fund to be managed and loaned in the manner prescribed by the statute for the purpose of maturing its stock for the benefit of its shareholders.    The foregoing extracts from the statute prescribe the method by which the right and title of the association to its funds may be transferred to others.    There is no question but that the money received by the State Bank of St. Louis on the twenty-third of August, 1895, amounting to the sum of $3,231.25 on the check deposited by Schramm was a part of this trust fund of the association, and was known to be such by all parties to the deposit.    The act of Schramm was the act of Tiernan the secretary, and the deposit may be treated as if made by him.    And as the appellant in this proceeding claims the fund as executor of Tiernan, his right thereto must be measured by the same rule that would be applied to Tiernan himself, if he were alive and making the claim.    The mere fact that this money was deposited in the bank to his individual credit, and thereby became mingled with other moneys deposited and credited to his individual account, would not have the effect of converting this fund' into individual assets of the testator, which his executor could claim against the association, or prevent the respondent from asserting its right thereto, in the balance, which it created or helped to create, to his credit, at the time of his death.    Whatever may be the rule in some other jurisdictions this is now well settled law in this State.    [Pundmann v. Schoenich, Adm'r, 144 Mo. 149; Evangelical Synod v. Schoeneich, 143 Mo. 652; Stoller v. Coates, 88 Mo. 514; Harrison v. Smith, 83 Mo. 210; Leonard v. Latimer, 67 Mo. App. 138; Brick Co. v. Schoeneich, 65 Mo. App. 283; Bank v. Sanford, 62 Mo. App. 394.]    The rule being, as announced in 143 Mo., *supra*, page 663, "that when a trustee or bailee wrongfully mixes trust money with his own, so that it can not be distinguished what particular part is trust money and what part is private

money, equity will follow the money by taking out of the insolvent estate the amount due the *cestui que trust*, although it can not be identified or separated from other funds with which it was mixed." The soundness of this doctrine, or the fact that the money of the association can be traced into the balance or fund brought into court by the bank, does not seem to be disputed, but it is contended that the doctrine does not apply to this case, for the reason that by the provisions heretofore recited in section 7 of the by-laws, that the secretary "shall at least once a month promptly deposit with the treasurer all moneys received by the association," a credit is given to the secretary, and that as to all *moneys* received by him on account of the association while in his hands, the relation that exists between the association and the secretary is that of creditor and debtor and not that of trustee and *cestui que trust*. This by-law, recognizing the fact that the *moneys* of the association on their way from its members and borrowers to its designated depository, paid in the first instance to its secretary, must of necessity remain in his hands for a short time, was intended simply to secure their prompt transmission by him to the treasurer and thence to the final depository of the association. It was not intended and did not have the effect of loaning the moneys of the association to the secretary or of making him simply a debtor to the association therefor, or of vesting in him any right thereto whatever, other than as agent, temporary depositary or trustee of the funds for the use and benefit of the association. To give it the construction contended for is not only unreasonable, but would render the by-law obnoxious to those charter provisions of the statute heretofore cited, enacted for the purpose of protecting the funds of such associations from improvident investment. This contention is manifestly untenable.

(2) It is next contended that the decree of the court was excessive in awarding to respondent the full amount of this trust fund for the reason that after it was deposited to the

credit of Tiernan, other moneys (rents) collected by him as agent for his patrons, were deposited to his credit, on the same account, all of which were not checked out at the date of his death. That these moneys were also trust funds, and went to swell the balance to his credit at that date, and the court should have apportioned the balance between the respondent and these other *cestuis que trustent* and awarded their portion to the appellant. This contention is tersely and satisfactorily answered by counsel for respondent, as follows:

"Who these parties were for whom these rent collections were made, whether or not they had overdrawn their accounts with Tiernan or held security from him and other elements bearing on their claims, did not appear in the pleadings nor in the evidence at the trial. Not one of these parties came forward to assert an equity or to deny respondent the relief it asked. Miss Keating did intervene, but was denied relief because she had with full knowledge of the facts converted her demand into a judgment against Tiernan's estate. The executor did not represent these rent claimants, he stood in the shoes of his testator. In his pleadings he did not set up any rights by way of assignment or otherwise in the name or stead of those supposed rent claimants. Therefore, if these moneys belonged to such rent claimants, they could not also be assets of the Tiernan estate. And the executor was not entitled to any part of the funds in court; and the court ought not to have allowed him what he in fact got by the decree, if his assertion that these funds belonged to these rent claimants is well founded. The rent claimants had an election to treat Tiernan as a debtor, and if they proved their demands against the estate in probate, this was a waiver of their right to claim specific funds." The decree of the circuit court is affirmed. All. concur.