THE STATE ex rel. NORTH TODD GENTRY, Attorney-General, Appellant, v. PAGE BANK OF ST. LOUIS COUNTY, S. L. CANTLEY, Commissioner of Finance, ET AL.—14 S. W. (2d) 597.

Division Two, March 2, 1929.

*Stratton Shartel*, Attorney-General, and *David P. Janes*, Assistant Attorney-General, for appellant; *Fenton T. Stockard* and *Howard Jennings* of counsel.

*Ralph & Baxter* and *John H. Haley* for respondents; *Harry W. Castlen* of counsel.

DAVIS, C.—This is a proceeding by the State of Missouri at the relation of the Attorney-General, filed before the Deputy Commissioner of Finance in charge of the Page Bank and allowed by him as a common claim only, and certified to the Circuit Court of St. Louis County, under Section 11719, Revised Statutes 1919, to determine the right of the State to priority of payment from the assets of the defunct bank to the amount deposited therein. The trial court denied the claim of priority and allowed it as a general claim. The State appealed.

The facts are not in dispute. They warrant the finding that Charles U. Becker, Secretary of State, collected registration and license fees for motor vehicles, which accumulated daily, through his accredited representative in the city of St. Louis. The total sum deposited was $45,579.49, and the deposits were made at various times between March 25 and April 23, 1927. The Page Bank went into liquidation on May 7, 1927. Section 4, page 79, Laws 1921, 1st Ex. Sess., provides for the appointment by the Secretary of State of a commissioner of motor vehicles, to serve at his pleasure and under his general supervision and direction, and Section 28 of said act prescribes that "all fees for the registration of motor vehicles and trailers provided for herein shall be made payable to the state treasurer and promptly transmitted by the commissioner to the state treasurer and deposited to the credit of the state road fund," and further provides: "All other fees provided for in this act shall be made payable to the state treasurer and promptly transmitted by the commissioner to the state treasurer and deposited to the credit of the state road fund." It was deemed impracticable, so the Secretary of State says, due to messenger hire and the want of time to list daily the persons to whom licenses were issued and fees received therefor, to provide data and forward money to the State Treasurer daily. Thereupon he consulted bankers as to the situation, and the scheme of depositing money from registration and license fees in various banks was devised, to be followed at reasonable intervals by the Secretary of State, upon the completion of lists, drawing upon the funds in the banks and delivering to the State Treasurer checks drawn to his order. The Page Bank of St. Louis County solicited the appointment as such depository, which was accordingly made. The Secretary of State and the Page Bank, together with six sureties, executed a contract and bond of deposit, which recited the intention of the Secretary of State to collect automobile license fees; the selection of the Page Bank as depository and its agreement to pay two per cent interest per annum on current automobile deposits;

and that it was intended to deposit $30,000, more or less, with said bank. Then followed the recitals of the bond to the effect that said bank and sureties are held and firmly bounded to said Becker, Secretary of State, in the sum of $50,000, conditioned on the bank safely keeping and promptly paying out when demanded by Becker, Secretary of State of Missouri, or other lawful authority, said funds and every part thereof deposited with said bank and interest thereon. The commissioner selected by the Secretary of State, pursuant to the contract and bond, deposited in said bank various sums of money, aggregating $45,579.49 at the time of the bank's liquidation, no part of which has ever been paid or has inured to the benefit of the State of Missouri. The account referred to was maintained in the name of Charles U. Becker, Secretary of State. It was understood, prior to the deposit, by the officers and representatives of the bank, that the funds to be deposited, derived from the collection of motor vehicle licenses, issued in the city of St. Louis, belonged to and was the property of the State. The Page Bank was one of a number of banks in which the Secretary of State caused money to be deposited in the process of transmitting it to the State Treasurer, because, as he said, it was impracticable to transmit it as received. The bank was used as an instrumentality in thus transmitting money. The Secretary of State executed checks to the State Treasurer, but they were protested after the bank went into liquidation. An assignment of the funds on deposit in the Page Bank was pleaded and the written assignment was appended to the petition as an exhibit. No question relating to the assignment arises. The record discloses that the Page Bank was insolvent and closed its doors on May 7, 1927, and as a consequence it ceased to do business and its affairs were taken in charge by the State Commissioner of Finance to liquidate its assets and close its affairs in accordance with the statutes applicable thereto.

I. The question of the right of the State to priority to the funds in the hands of the Finance Commissioner is presented. At common law, it was the prerogative right of the sovereign to priority of

payment from the assets of an insolvent debtor as against unsecured general creditors. As is said in Marshall v. New York, 254 U. S. 380, l. c. 382: "The priority was effective alike whether the property remained in the hands of the debtor, or had been placed in the possession of a third person, or was *in custodia legis.*" The right of the State to priority, however, under the common law, becomes a moot question, for the representative of our sovereignty, the Legislature, has exercised its prerogative, declaratory of the common law, by the enactment of a statute (Sec. 7212, R. S. 1919) reading:

"Whenever any person indebted to the State of Missouri is insolvent, or whenever the estate of any deceased debtor in the hands of the executors or administrators is insufficient to pay all the debts

due from the deceased, the debts due to the State of Missouri shall be first satisfied, and the priority hereby established shall extend as well to cases in which a debtor not having sufficient property to pay all his debts makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed: *Provided,* that nothing in this article contained shall be construed to interfere with the priority of the United States as secured by law, or the payment of the expenses of the last sickness, wages of servants, demands for medicine and medical attendance during the last sickness of the deceased, nor funeral expenses."

Respondents contend, however, that the State has waived its right to priority, and cite In re Holland Banking Company, 313 Mo. 307,  281 S. E. 702, and Cook County National Bank v. United States, 107 U. S. 445, 27 L. Ed. 537, 2 Sup. Ct. Rep. 561, as controlling. Three postulates by respondents are presented for our consideration.

First: Article II, Chapter 123, Revised Statutes 1919, provides a method of selection of depositories in which funds in the custody of the State Treasurer may be deposited, among which is the requirement of securities to indemnify the State against loss, which statutes constitute a waiver of priority by the State.

Second: Sections 11688, 11691 and 11714, Revised Statutes 1919, regulating the administration of the affairs of insolvent state banks, designate specified priorities without including therein unpaid State deposits, which is also a waiver and which contention, it is alleged, is supported by Cook County National Bank v. United States, supra.

Third: Section 13345, Revised Statutes 1919, is tantamount to a waiver. It reads: "The amount of every account audited, adjusted and found due the State, according to the provisions of Article I and II of this chapter, with the penalties and interest thereon, is declared to be a lien upon the real estate of the person charged with the same from the time that suit shall be commenced for the recovery thereof."

II. We have set forth the matter in the foregoing paragraph merely to develop respondents' theory of justification of the trial court's decision. Whether there is substance in any of the theories advanced by respondents in seeking an affirmance of the judgment we need not adjudge, for the State advances and briefs a postulate, which we consider determinative.

It is a general rule of law that an assignee for the benefit of creditors takes the property of an insolvent debtor subject to every disability to which it would have been subject in the hands of the debtor himself. [2 R. C. L. 656, 720.] Equitable principles as applied to the facts develop by the deposits of registration and license fees for motor vehicles collected under the direction and supervision of the

Secretary of State a trust *ex maleficio* on the part of the Page Bank. There is no question that the bank knew the source of the money deposited with it, and, whether or not it perceived and comprehended the constraint of Section 28, Laws 1921, 1st Ex. Sess., with respect to the fees made payable to and the prompt transmission thereof to the State Treasurer, it was constructively imbued and charged with such knowledge. The Secretary of State was a mere collector of the fees, nothing more. The authority given him did not extend to a deposit, and it was his duty to promptly transmit the fees to the State Treasurer, to whom they were made payable and under whose control and custody the statute placed them. Notwithstanding an honorable intent on the part of the Secretary of State as to the deposits, such deposits were made against the admonition of the law and were illegal, and, as the bank knew the source of the deposits, it became a trustee as to the fees deposited. [Harrison v. Smith, 83 Mo. 210, 53 Am. Rep. 571; Stoller v. Coates, 88 Mo. 514; Page County v. Rose, 130 Iowa, 296, 106 N. W. 744, 8 Ann. Cas. 114, 5 L. R. A. (N. S.) 886; Myers v. Board of Education of Clay Center, 51 Kan. 87, 32 Pac. 658, 37 Am. St. 263; Marquette v. Wilkinson, 119 Mich. 413, 78 N. W. 474, 43 L. R. A. 840; State v. Midland State Bank, 52 Neb. 1, 71 N. W. 1011, 66 Am. St. 484; Watts v. Commissioners of Cleveland County, 21 Okla. 231, 95 Pac. 771, 16 L. R. A. (N. S.) 918; Ormsby v. Finney, 281 Fed. 840.]

III. Having determined that the bank became a trustee relative to the fees the Secretary of State deposited with it, the question naturally arises as to the right and ability of the State (the *cestui que trust*) to trace and follow trust funds converted and intermingled by the bank with other moneys held in its coffers. Four classifications distinguish the rulings of the courts on the subject. The interested will find an excellent treatise on the different rules in Lawyers Reports Annotated 1916C, page 21, *et sequa.* While other jurisdictions variate the rule in a greater or less degree, Missouri follows the rule that, if a trust fund is proved to have been deposited in a mass, and wrongfully and illegally mingled therewith, even though indistinguishable, it may be recovered and taken from the estate of the insolvent, on the ground that it went into, increased and swelled the volume of the insolvent's assets, and it is chargeable against the insolvent estate to the amount of the converted fund as a preferred demand. Paul v. Draper, cited below, develops the distinction between a legal and an illegal deposit. [Harrison v. Smith, 83 Mo. 219, 53 Am. Rep. 571; Stoller v. Coates, 88 Mo. 514; Evangelical Synod v. Schoeneich, 143 Mo. 652, 45 S. W. 647; Pundmann v. Schoenich, 144 Mo. 149, 45 S. W. 1112; Tierman's Executor v. Security B. & L. Assn., 152 Mo. 135, 53 S. W. 1072; Paul v. Draper, 158 Mo. 197, 59 S. W. 77; Tufts v. Latshaw, 172 Mo. 359, 72 S. W.

679; Orr v. St. Louis Union Trust Co., 291 Mo. 383, 236 S. W. 642; Bank of Poplar Bluff v. Millspaugh, 313 Mo. 412, 281 S. W. 733; Federal Reserve Bank v. Millspaugh, 314 Mo. 1, 282 S. W. 706; Bartlett v. McCallister, 316 Mo. 129, 289 S. W. 814; Huntsville Trust Co. v. Noel, 321 Mo. 749.] Applying the rule, in connection with our foregoing determination that Becker illegally deposited motor vehicle registration and license fees with the Page Bank to its knowledge, instead of promptly transmitting them to the State Treasurer, as the statute required, whereby the assets of said bank were increased and augmented, the amount of the deposits made by Becker to the extent of $45,520.54 is payable out of the common assets of the Page Bank in the hands of the Deputy Finance Commissioner as a preferred claim. Interest allowed by the bank in the sum of $58.95 on the deposit fund and protest fees of $47.76 with respect to dishonored checks, were no part of the money deposited and consequently cannot be included within the trust fund, and the two items are disallowed.

IV. We think the statutes, Sections 11716 to 11722, inclusive, Revised Statutes 1919, contemplate that all claims against a bank in liquidation may be filed with the Commissioner of Finance, or his deputy in charge. Whether he has sole original jurisdiction to hear and determine claims, we need not determine. [However, see Sec. 22, Art. VI, Constitution of Missouri.] In the present instance the claim was filed with him, and in accordance with the provisions of Section 11719, Revised Statutes 1919, the claim of the State was heard and approved by the deputy commissioner, and certified and presented to the Circuit Court of St. Louis County for determination as to priority of payment. While the claim filed with the commissioner must tend to show its general nature, it is naturally an informal matter. The commissioner was denied jurisdiction to determine priorities, the statute lodging that power in the circuit court. The power included priorities of an equitable nature.

It follows that the judgment is reversed and the cause remanded to the Circuit Court of St. Louis County with directions to allow the claim of the State as a preference or priority in the sum of $45,520.54 against the estate of the Page Bank. *Higbee* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.