WINSTON BANK OF WINSTON, APPELLANT, v. THE FARMERS' EXCHANGE BANK OF GALLATIN IN LIQUIDATION, S. L. CANTLEY, COMMISSIONER, ETC., RESPONDENT.—51 S. W. (2d) 150.

Kansas City Court of Appeals.   June 13, 1932.

*Arch B. Davis, James W. Davis* and *E. G. Robison* for appellant.

*Lewis B. Gillihan, J. W. Alexander* and *L. M. Hyde* for respondents.

BOYER, C.—This is, an appeal from a judgment in which a claim for preference was denied and the claim allowed and classified as common.   For convenience the parties will be referred to as the Winston bank, plaintiff, and the Gallatin bank, defendant.   There is no question as to the corporate existence of both parties, and the character of their business is indicated by their names.   They were both engaged in the general banking business in adjacent territory.   The Gallatin bank failed and was formerly closed March 4, 1926, and placed in the hands of the commissioner of finance. The claim is for the value of certain United States bonds in the

amount of $6000 and interest. It is alleged that the bonds were left in the custody of the defendant bank for safekeeping only, and that the custodian converted them to its own use. The sufficiency of the petition is not questioned. The defense is that while the Gallatin bank used the bonds and sold them, such use and sale were permissive and that plaintiff received credit for their full value in its general account in defendant bank; and that the relationship of the parties in regard to the bonds and the proceeds was that of debtor and creditor.

Stating the facts chronologically, the record shows that on May 11, 1920, the Winston bank owned in its own right liberty bonds of the face value of $7000; that the cashier of said bank, fearing robberies, took said bonds, together with other bonds belonging to its customers, to the Gallatin bank and left them there in the custody of an officer of the Gallatin bank for safekeeping, and that they were so received by defendant bank at the time. The bonds belonging to the customers of the Winston bank were registered bonds and were all returned; the bonds belonging to the Winston bank were coupon or bearer bonds and were never returned. They bore interest at the rate of four and one-fourth per cent.

The records of the Gallatin bank and other evidence in the case show that on or about May 13, 1920, two notes amounting to $7000 were removed from the assets of the bank and placed in an envelope marked Winston bank, and on the same day the bonds in question were transferred to the bond assets of defendant, and later sent to the Fidelity National Bank & Trust Company of Kansas City, where the amount of the bonds were credited to the account of the Gallatin bank. The bonds were gone, but of these transactions there was no knowledge on the part of the Winston bank. When the bonds were left in the custody of the Gallatin bank it was with the understanding that the cashier or some officer of the bank would clip the interest coupons when they became due and credit the amount thereof to the account of the Winston bank which was maintained in the Gallatin bank. The interest coupons on the bonds were due in April and October, and in the month of October, 1920, and at semi-annual periods thereafter the Gallatin bank credited to the account of the Winston bank the amount of interest due on $7000 at four and one-fourth percent and sent advice cards to the Winston bank when the credits were so made. Some of these cars were put in evidence and bore the legend "Int. on Bonds," and "Coupons," signed by the cashier of the Gallatin bank. Near the close of December, 1920, the Gallatin bank sent a statement of reconcilement of accounts to the Winston bank in which it appeared that $7000 had been deposited to the credit of the plaintiff. The cashier of plaintiff bank shortly thereafter called upon the officers of the Gallatin bank for an explanation of this item and was informed that it represented the bonds and, in

effect, that the Winston bank had been given credit for the amount of the bonds deposited in accordance with the method adopted by the Gallatin bank, but that the liberty bonds were still there and were subject to the order of the Winston bank.

The cashier of the Winston bank testified that no authority or direction had been given at any time to sell or convert the bonds into cash and to give plaintiff credit for the amount; that the officers of the Gallatin bank represented to him that the bonds were still there. He said: "They told me that that was all right to carry it in that form, and as I was new in the business I just supposed that it was." After this interview and early in January, 1921, the cashier of the Winston bank made a similar entry in reference to the $7000 item upon the records of that bank, and understood said entry and that of the Gallatin bank to be a proper record of the true transaction and not a record of a cash deposit.

Prior to November, 1922, the cashier of the Winston bank requested the Gallatin bank to sell its bonds to the amount of $1000, and without informing him that all of the bonds had already been disposed of the officers of the Gallatin bank pretended to sell bonds to the amount of $1000 and gave the Winston bank credit for that supposed transaction in the amount of $1002.49, and thereafter continued the usual credits for the interest coupons on $6000 worth of bonds regularly at or near the due dates thereof until the bank closed. There is evidence that the Gallatin bank also gave credit to the Winston bank for interest at the rate of four per cent on its general account, other than the amount represented by the bonds.

The account of the Winston bank in the Gallatin bank was apparently active and on various dates, according to the records of the Gallatin bank, it appeared that the Winston bank had overdrawn its account unless the amount of the bonds credited to the account was regarded as a part of it. According to plaintiff's evidence, the apparent overdrafts did not appear from the condition of the account as shown on the books of the Winston bank, and that the difference in all instances but one was owing to delayed remittances made by the Winston bank, but not shown by the records of the Gallatin bank to have been received in time to prevent an overdraft without considering the amount of the bonds. On one occasion there was in fact an overdraft for some period of time upon which the Gallatin bank charged interest. There would have been no overdraft if the amount of the bonds had been considered a part of the deposits made by the Winston bank. The published statements and reports of the Winston bank apparently accounted for the liberty bonds according to the record made by the Gallatin bank and as a deposit subject to check. However, it is evident that the cashier of the Winston bank was influenced by the representations and the explanation made to him by the officers of the Gallatin bank that

it was proper to keep the account as the Gallatin bank had done. It is also evident that the agents of the Gallatin bank led the cashier of the Winston bank to believe that the bonds were still in its actual possession and subject to the order of the Winston bank; and that they constituted a special bond deposit and not a deposit subject to check.

The only witness offered by the defendant was the former president of the Gallatin bank. His testimony in reference to the extent of his knowledge of the bond transaction was indefinite. He said he had no personal recollection of the transaction on May 11, 1920, nor of that in the latter part of December, 1920; nor of the amount of the bonds so credited to the account of the Winston bank; that the bonds were brought there in May and sold in December, and if there was any arrangement it was with some other officer of the bank; that his knowledge of the transaction was derived from the records of the bank. He also testified to the conclusion that "we were permitted to use those bonds." He was not clear as to any agreement in reference to them except that the bank was to pay four and one-fourth per cent interest for the amount of the bonds and four per cent interest on the remainder of plaintiff's account.

It is apparently conceded, and the evidence shows, that the liberty bonds belonging to the Winston bank were sold to the Fidelity National Bank & Trust Company of Kansas City, and that the Gallatin bank received credit therefor in its account carried at that bank. It is also shown that all of the funds of the Gallatin bank and credits due it in the Kansas City bank were from time to time checked out or withdrawn by the Gallatin bank, and that its account was completely exhausted on four different occasions prior to the time the Gallatin bank ceased business. But its account with the Fidelity National Bank & Trust Company remained active, and at the time the Gallatin bank closed it had on deposit to its credit in said Fidelity bank the sum of $9691.56. This amount, however, was appropriated by the Kansas City bank and applied on indebtedness of the Gallatin bank and none of it reached the hands of the commissioner. It is shown by admissions and proof that from assets of the failed bank which did reach the commissioner he had realized thereon a sum in excess of $140,000, and at the time of trial had more than $100,000.

## Opinion.

Appellant contends that the relationship of the parties in regard to the bonds was that of bailor and bailee and insists upon all the rights and remedies incident to a bailment and available to a *cestui que trust.* Respondent contends to the contrary and asserts that no trust relationship existed and that substantial evidence in the case shows the actual relationship between the parties was that of debtor

and creditor and supports the finding and judgment which denied a preference.

With due deference to the conclusion of the trial court, we are of opinion that plaintiff is entitled to a preferential allowance for the amount of the bonds at the time they passed into the assets of the defendant bank. The weight of the evidence supports the position of the plaintiff. There is no convincing proof that the claimant ever intended that its bonds should be converted into money and pass as such into its general account. There could not possibly be any debate upon the question as to the original relationship of the parties. The defendant was a mere custodian; it had no property right in the bonds and never acquired any. Means of deception were employed by it to mislead claimant after the bonds had actually been converted. The payment of interest upon the bonds at the rate called for through a number of years, and the pretended sale of said bonds to the amount of $1000 after they had passed from the possession of the defendant, the charge of interest on plaintiff's overdraft, and the verbal statements and assurances that all of the bonds were still in the defendant bank subject to the order of plaintiff, all show an admission of the right of ownership in said bonds to be in the plaintiff; and show that the parties never mutually intended or agreed that defendant should be invested with title, and that plaintiff would release its right to the bonds and accept in lieu thereof a credit in its general account for their value. No other evidence in the case overturns this proof. The fact that the cashier of the claimant bank was misled and deceived by the explanation and representations made to him by the officers of the defendant bank in reference to the character of the entry made in its books and was induced thereby to make a similar entry upon the books of the Winston bank to show the bond transaction does not alter or change the actual and intended relationship of the parties. The evidence is positive, direct, and undenied that misrepresentations were made to the owner of the bonds and that the owner continued under the belief that all of the bonds, except the ones which were authorized to be sold, remained constantly in the bank subject to its order until after the bank closed. It is easy to conceive that the trust and confidence of an inexperienced country banker were abused by the officers of the defendant. The purport of the evidence on the subject of the methods of bookkeeping does not militate against the theory of the plaintiff of its intention and purpose to treat the bonds as a special deposits for safekeeping only and not as an item deposited to its current account. This evidence should not be given controlling weight against the clear equities of the plaintiff. After the book entry and the reconcilement statement of the Gallatin bank were made and an explanation called for, assurances and misrepresentations were then made that the bonds were still in the bank subject to

the order of claimant at any time. The preponderance of the evidence requires the conclusion that the relationship of the parties was that of bailor and bailee and that such relationship was never changed.

In view of a bailment which we find existed and a failure of the bailee to return the property entrusted to its custody, it remained only for the claimant to show that the subject of the bailment was used to increase the assets of the bank which passed into the hands of the commissioner. The assets of defendant bank were increased to the amount of the bonds at the time of their conversion. The defendant first placed the bonds to its own credit and charged out of its assets an equal amount in notes. What became of these notes we do not know. The bonds were then sent to the Fidelity National Bank & Trust Company where defendant received credit for them in its account in said last named bank. The proceeds of the bonds and all other deposits which defendant had in the Fidelity bank were withdrawn by check or otherwise and on different occasions there was no balance in its account at said bank. Respondent relies upon these facts as showing a complete dissipation of the alleged trust fund and as a bar to the claim of a preference because said fund could not have reached the hands of the commissioner. The proposition of a failure to adequately trace the fund is untenable. It is immaterial whether the identical funds were dissipated or not provided the general assets of the bank were augmented by the use of the funds, and provided further that an equivalent amount of assets did actually reach the hands of the commissioner. The proceeds of the bonds constituted a trust fund and when converted a trust was thereby impressed upon all of the assets of the bank now in the hands of the liquidator. The proposed art of escape does not furnish immunity. In re Farmers Exchange Bank of Gallatin, 37 S. W. (2d) 936, 943. Authorities cited by respondent have been examined and found to be inapplicable and without controlling influence upon the instant case.

The demand is for $6000 and for unpaid interest thereon to the date the bank closed. Claimant is not entitled to the interest item. It was no part of the property converted. [State ex rel. Gentry v. Page Bank, 322 Mo. 29, 37, 14 S. W. (2d) 597, 599.] The claim should be allowed as a preferential demand in the sum of $6000. The judgment should be reversed and the cause remanded with direction to enter judgment according to the views herein expressed. The Commissioner so recommends. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with direction to enter judgment according to the views therein expressed. All concur.