507 F.Supp. 397 (1980)
ALLIED VAN LINES, INC., Plaintiff,
v.
SMALL BUSINESS ADMINISTRATION, Defendant.
No. 79-1293C(A).
United States District Court, E. D. Missouri, E. D.
December 22, 1980.
*398 Jeffrey Shank, St. Louis, Mo., for plaintiff.
Bruce D. White, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
Plaintiff, Allied Van Lines, Inc. (hereinafter referred to as Allied) brings this action in three counts. Count I alleges that Allied is entitled to $257,069.75 in accounts receivable of Biltmoor Moving and Storage Company (hereinafter referred to as Biltmoor) pursuant to an agency contract between them. Biltmoor has ceased doing business and its assignee for benefit of creditors, Milton Goldfarb, has allegedly collected and improperly paid this sum to defendant, Small Business Administration (hereinafter referred to as SBA), another creditor of Biltmoor, by virtue of a secured chattel mortgage. Allied seeks a declaration of SBA's rights and duties with respect to Biltmoor's accounts receivable, a declaration of the effect of Biltmoor's assignment on Allied's agency contract with it, and a *399 judgment in the amount SBA should turn over to Allied.
Count II alleges, on the same theory as Count I, that SBA has already received payment of Biltmoor's accounts receivable and requests judgment for Allied against SBA in that amount.
Count III alleges that Allied is entitled to recission of a secured agreement by which it sold certain equipment to Biltmoor. Allied claims that Biltmoor misrepresented the fact that it could take unencumbered title to the equipment. The equipment has been sold, and Allied seeks an order releasing to it the proceeds from the sale ($6,021.60) which are currently in an escrow account.
The parties agree that plaintiff is a corporation duly organized and existing under the laws of the State of Deleware, with its principal place of business in Chicago, Illinois. Defendant is an agency of the United States Government, with an office in St. Louis, Missouri.
This action was originally filed in the Circuit Court of the City of St. Louis on October 4, 1979. It was removed to this Court on October 24, 1979, pursuant to 28 U.S.C. § 1446(d). Trial was held on August 8, 1980.
The Court has carefully reviewed the testimony, exhibits and briefs of the parties, and for reasons set out herein finds that Allied is not entitled to the relief it seeks.
The background facts are as follows: On June 23, 1955, Allied and Biltmoor entered a "Non-Carrier Agency Contract" which provided, inter alia, that Allied would employ Biltmoor "to book, register, pack, crate, prepare for transportation, receive, load, transfer, unload, store, warehouse and deliver shipments of household goods for and in behalf of [Allied] * * *." It further provided that Allied was "[to bill and carry * * * all shipments so booked and registered by [Biltmoor] pursuant to [Allied's] reasonable rules and regulations * * *.]"
Allied's "reasonable rules and regulations" consisted of an "NAF/GAF" program, by which an agent such as Biltmoor would send invoices for services it rendered Allied to Allied for collection. After payment, Allied remitted between fourteen percent and eighty-nine percent of the collection to the agent. Participation in the program was voluntary until an agent encounted financial difficulty, when it became compulsory. The services subject to NAF/GAF billing were limited to those rendered by an agent for or in behalf of Allied (generally interstate or international transfers).
In late 1976 Biltmoor encountered financial trouble and, on January 25, 1977, Allied placed Biltmoor on compulsory NAF/GAF participation.
On April 15, 1977, Biltmoor obtained a chattel mortgage of $150,000.00 from the First Missouri Bank and Trust Company of Creve Coeur. This was secured by "[a]ll machinery and equipment (including automotive), furniture and fixtures now owned or hereafter acquired and the proceeds thereof. All inventory and accounts receivable now owned or hereafter acquired and the proceeds thereof." Finance statements were filed on April 19th and April 20th, 1977, with the St. Louis County Recorder's office and the Secretary of State of Missouri, respectively. SBA is the successor to the bank's interest in this loan.
On January 18, 1979, Allied and Biltmoor renewed their agency relation. In addition to its duties enumerated under the 1955 agreement, Biltmoor was, "in connection with the collection of charges on behalf of [Allied], to hold such collections in trust for [Allied] until remitted by [Biltmoor] directly to [Allied], or by processing through [Biltmoor's] regular account with [Allied] * * *."
Between January 25, 1977, and April 5, 1979, Biltmoor accumulated a disputed amount of accounts receivable. On April 5, 1979, however, Biltmoor ceased doing business and assigned "inventory, fixtures, office furniture, choses in action, equipment and cash" in trust to Milton Goldfarb for the use and benefit of creditors. Allegedly, Goldfarb has collected Biltmoor's receivables and has paid them to SBA; Allied has received nothing from Goldfarb.
*400 Simply stated, Allied and SBA are rival creditors of an insolvent company (Biltmoor).
SBA initially contends that while Allied may have a cause of action against Goldfarb for improper distribution of assigned assets, it has no cause of action against SBA for receipt of dividends from Goldfarb. The Court assumes, without so deciding, that Allied has a cause of action against SBA.
With respect to Allied's request in Count I for a declaration of SBA's rights and duties toward it, the record shows no relation between SBA and Allied from which relative rights and duties could spring. There was no evidence of misconduct by SBA from which a duty could be implied, and the Court knows of no duties inherent in the common desire of rival creditors to obtain payment. Accordingly, this Court declares that there are no relative rights and duties between SBA and Allied.
With respect to Allied's request in Count I for a declaration of the effect of Biltmoor's assignment on Allied's agency contract, the Court finds that on the date of Biltmoor's assignment Allied became an unpreferred, unsecured contract creditor of Biltmoor. Allied never sought to secure Biltmoor's agency obligations to it, and in failing to do so never perfected its interests against encroachment by third parties. R.S.Mo. 400.9-301, 302.
Allied suggests that by the duties enumerated in its agency agreements, funds collected by Biltmoor for services in behalf of Allied were held in trust, and that on the date of Biltmoor's assignment, Allied was the sole "beneficiary" of those funds. This argument fails for three reasons. First, there was no express trust created between Allied and Biltmoor, and no constructive trust over funds to which Allied is entitled. Second, assuming that funds to which Allied was entitled were subject to trust, said trust is subordinate to SBA's perfected security interest. Third, assuming that Allied has a superior claim to funds subject to trust, there is insufficient evidence to establish a specific amount due and owing to Allied.
Although the agency contract was entered in Illinois, Biltmoor's performance was contemplated in Missouri and its alleged trusts are governed by Missouri law. The agency contract could not create an express trust because under Missouri law an express trust must be created by a showing "by evidence which is clear, unequivocal and convincing to the judicial mind and thus by more than a mere preponderance of the evidence" an intent to separate legal and equitable title to property. Masterson v. Plummer, 343 S.W.2d 352, 355 (Mo.App. 1961). Biltmoor's statements were promises in Allied's printed form contract made in January, 1979, when Biltmoor was without money or contract bargaining power. Furthermore, the statements do not create a trust in present tense terms, but merely promise to create a trust with funds collected in the future. Inasmuch as the record shows no clear, unequivocal evidence of Biltmoor's intent to create a trust, the Court finds no express trust over Biltmoor's accounts receivable.
While Biltmoor's breach of its agency contract with Allied may warrant a constructive trust, Pollock v. Brown, 569 S.W.2d 724, 730 (Mo. en banc 1978), Ward Parkway Shops v. C. S. W. Consultants, 542 S.W.2d 308, 313 (Mo.App.1976), McKeehan v. Wittels, 508 S.W.2d 277, 280 (Mo.App. 1974), the record does not clearly establish that funds subject to said trust went to SBA. There was substantial evidence that Biltmoor carried on financial activities after its April 5th assignment. However, the fact that Biltmoor involved services for Allied totalling $10,892.71, deposited $11,492.76 in its bank account during April, 1979, and then withdrew $11,500.00 near the end of that month, carries no legal import in this action unless those funds can be traced to SBA.
The only evidence of funds traced to SBA showed its receipt of $927.93 owed solely to Biltmoor, $3,992.62 for services rendered a customer for whom Biltmoor routinely performed both interstate and intrastate transfers *401 (Emerson Electric), and $16,450.95 subject to unspecified Allied claim. There was no evidence of the particular services rendered Emerson, and no evidence of which particular account Allied claimed. In further light of the fact that none of the amounts received by SBA correspond to amounts Biltmoor either collected on Allied's behalf or withdrew from its bank account, the Court concludes that the record fails to show that SBA received funds subject to a constructive trust.
Assuming that a receivables trust had funds subject to Allied's claim, the Court finds that said trust was superseded by SBA's security interest. In Matter of Schalk, 592 F.2d 993 (8th Cir. 1979), the Eighth Circuit found that a creditor with a security interest in a trailer had a claim superior in a bankruptcy for that trailer because, inter alia, the creditor had perfected his interest prior to declaration of bankruptcy. Allied's contention that the receivables could not be secured because they were in trust ignores the fact that Biltmoor's receivables were secured over a year and a half before Allied ever mentioned the word "trust" to Biltmoor; Allied cannot circumvent a legally secured interest by designating its claim a "trust." Just as the Schalk trustee in bankruptcy had a claim subordinate to the previously secured creditor on the trailer, Allied's trust has a claim subordinate to SBA's April, 1977, lien on the receivables as trustee for Allied.
Even further assuming that Allied's constructive trust exists, that it is superior to SBA's secured claim, and that it contains funds subject to Allied's claim, the record does not warrant transfer of all these funds to Allied. Biltmoor breached its agency contract by failing to participate in a compulsory bill collection program. After the bills were collected, however, Biltmoor was entitled to between fourteen and eighty-nine percent of the payments, and there is no evidence by which the Court can determine what percentage of the funds allegedly subject to constructive trust are Biltmoor's in the final analysis. It would be pointless for this Court to divest SBA of funds merely to enable Allied to perform accounting rituals, particularly when it is clear that some amount would be returned to SBA.
Accordingly, the Court finds that on the date of Biltmoor's assignment for benefit of creditors, Allied became an unpreferred, unsecured contract creditor of Biltmoor.
With respect to Allied's request in Count I for a declaration of the amount owed by SBA to Allied, the record does not show that Allied is entitled to any money payable to SBA on its secured claim. It has long been the Missouri rule that assignees for the benefit of creditors take and distribute subject to superior claims against the property. State v. Page Bank of St. Louis County, 322 Mo. 29, 14 S.W.2d 597, 599 (1929). Inasmuch as SBA's position is secured by the accounts receivable at issue, SBA has rights superior to Allied's under R.S.Mo. 400.9-301 and this Court cannot say that Goldfarb acts improperly in paying SBA before Allied. Accordingly, Allied is entitled to nothing from funds payable to SBA.
With respect to Allied's request in Count II for judgment against SBA in the amount of Biltmoor's accounts receivable SBA has received, the Court finds that Allied is not entitled to the requested judgment for reasons set forth in disposition of Count I.
In Count III Allied seeks an order rescinding a combined note and security agreement (Plff's Ex. 25) by which it sold equipment to Biltmoor on the ground Biltmoor misrepresented to Allied that it would keep said equipment "free and clear of all liens and claims whatsoever, other than the security interest granted hereunder," and that "no financing statement nor chattel mortgage covering the collateral is on file in any public office * * *." If Allied had perfected its note and security agreement within ten days of the sale, it would have had an interest superior to SBA. R.S.Mo. 400.9-312(4). In fact, Allied did not perfect its interest and SBA's security interest attached to and took precedence over the equipment. See Drysdale v. Cornerstone *402 Bank, 562 S.W.2d 182 (Mo.App. 1978). Accordingly, the Court finds that Allied is not entitled to an order rescinding the note and security agreement and that SBA is entitled to the $6,021.60 in the escrow account.
For the foregoing reasons, the Court finds that there are no relative rights and duties between SBA and Allied, that Allied is an unpreferred, unsecured contract creditor of Biltmoor, that Allied is entitled to none of the funds payable or paid to SBA, and that Allied is not entitled to rescission of its contract with Biltmoor of July 7, 1978. Accordingly, judgment will be entered in favor of the defendant on Counts 1, 2 and 3.
The Court adopts this memorandum opinion as its findings of fact and conclusions of law, and the clerk of the Court is directed to prepare and enter the proper order.